No. 13,119.

Mrs. Harriet A. Hornor vs. R. T. McDonald et als.

### Syllabus.

1. An averment in a petition of the solidarity of an obligation which is joint in fact, and a prayer for a judgment *in solido* against several defendants, does not constitute an estoppel against the plaintiff's recovery against some of the defendants because she made a compromise with another defendant after issue joined.

2. The obligation of two or more persons who intervene in an act of sale to a corporation, and give their personal guarantee that for a period of years its shares of preferred stock shall annually earn and pay a dividend of ten per cent., is joint as to the obligors and not *in solido.*

3. Such a covenant evidences an independent stipulation *pour autrui* and not a contract of suretyship ; and the obligation of the intervenor is different and distinct from that of the corporation. Consequently, the insolvency of the corporation judicially declared, did not have the effect of precipitating the maturity of the instalments of the intervenors indebtedness not yet run to maturity on the face of the contract, notwithstanding it had that effect· as to its own debts not yet due. The principles announced in Hawkes vs. Bright, 51st Ann., 79, are affirmed.

**A** PPEAL from the Civil District Court, Parish of ˙ Orleans. *Rightor, J.*

*Guy M. Hornor* and *Bernard McCloskey* (*Omer Villere* and *Dinkelspiel & Hart,* of Counsel) for Plaintiff, Appellee.

*Harry H. Hall* for R. T. McDonald, Defendant, Appellee.

*Clegg & Quintero* for Helen H. Hart and Samuel J. Hart, Defendants, Appellants.

The opinion of the court was delivered by

WATKINS, J. This suit was brought March 2, 1898, by the plaintiff, as the holder of certain shares of the preferred stock of the New Consumers' Ice Company, Limited, against the defendant McDonald and the heirs of Judah Hart, and they .seek to recover a judgment against them *in solido* for the sum of $1,162.50 as set forth in their original petition.

In a supplemental petition, plaintiff prays for judgment against the same defendants *in solido,* for an additional sum of $8,137.50.

Petitioner alleges, in her original petition, that she is the holder of 116 ¼ shares of the stock of said corporation, of the par value of one hundred dollars, upon which is due and payable a dividend of ten *per cent. per annum,* payable semi-annually, and that the dividends due on the first days of May and November, 1897, are unpaid, due and owing.

That demand has been made upon the corporation for payment, but that said company is in the hands of a receiver in the United States Court, and hopelessly insolvent.

In her supplemental petition she alleges, that under the terms of the contract sued upon, all the dividends on her shares of stock, for a period of ten years from the twenty-first day of June, 1893, less those admitted to have been paid, are now due and exigible. That by error in her original petition, only two dividends are claimed as due and exigible, whilst in truth and in fact fourteen are due and exigible, amounting to the sum aforesaid.

Petitioner avers, that by notarial act, of date May 2nd, 1894, the defendants McDonald and Judah Hart, for a valuable consideration, did guarantee and bind themselves *in solido* that the New Consumers' Ice Company, Limited, should earn and pay to the holders of the preferred stock of the corporation, a dividend of ten *per cent. per annum* on the par value of the same, to each and every holder thereof, payable semi-annually.

That the said consideration for said guarantee is truly set forth in said notarial act, and that they are bound and responsible to her for its fulfillment. That Samuel J. Hart and Helen H. Hart, wife of Maurice J. Hart, are the heirs and legal representatives of Judah Hart, whose succession has been opened in the Civil District Court, and same has been accepted purely and simply by said heirs, who have, thereby, become responsible for the payment of the debts of the deceased. That McDonald is a non-resident of the State and has money and property within the jurisdiction of the court, and she prayed for the issuance of a writ of attachment against the same.

For answer, the defendant, McDonald, pleads a general denial and admits that he signed the stipulations contained in the notarial act evidencing the sale by liquidators of the Consumers' Ice Company, Limited, to the New Consumers' Ice Company, Limited, of date May 2, 1894; but he denies that he is liable thereunder as alleged, or in any manner whatsoever. He avers that he signed the stipulation in the said act in consideration, solely, of the issuance to him by said New Consumers' Ice Company, Limited, on the 31st day of May, 1893, of 1242 shares of the common stock of said company, of the par value of $124,200.

He avers, further, that subsequently, to-wit; on or about the 25th day of August, 1896, he was called upon by the New Consumers' Ice Company, Limited, to surrender said 1242 shares of stock by reason of the fact, that, under the charter of the company and under the provisions of the Constitution of the State of Louisiana, said stock

was illegally issued to him. He avers that upon said demand to return and cancel said stock he did return it, and the same was cancelled and that the entire consideration received for his aforesaid guarantee of ten per cent. dividend upon the preferred stock, was thus taken from him and said guarantee was and has since remained entirely without consideration.

Further, that all and singular, the entire property, movable and immovable, of the New Consumers' Ice Company, Limited, was, in 1897, placed in the hands of a receiver in the United States Circuit Court; and same was, by order of that court sold on the 28th of February, 1898, to pay a mortgaged indebtedness of $50,000, and more. He further avers that said corporation is no longer a going concern and has passed permanently out of existence, and its stock was destroyed and rendered worthless by the sale of all the property which it represented; and that, thereby, the principal obligation of defendant corporation to the plaintiff was extinguished, and with it fell and lapsed any and all obligations accessory thereto which may, at the time of said sale, have existed; and respondent avers that if said obligation was not void for want of consideration, and he reiterates it was, it was extinguished with said principle obligation.

For these reasons, he prays that the plaintiff's demands be rejected.

The defendants S. J. Hart and Helen H. Hart for answer to the original and supplemental petitions, plead a general denial and admit that they are the heirs of Judah Hart, and have been, by a judgment of court, sent into possession of his estate. They aver that Judah Hart signed the notarial act of sale mentioned in plaintiff's petition, on the 2nd day of May, 1894; but deny that he bound himself in manner and form set forth in plaintiff's petition.

They further allege, that the terms of the notarial act did not and were not intended to bind Judah Hart to guarantee the payment of dividends to plaintiff as set out in the petition; and that there was not, and Judah Hart did not receive any consideration for any such contract or guarantee.

That if such contract be expressed, or be intended to be set forth in the notarial act, by which it is stipulated that the said Judah Hart and R. T. McDonald, who guaranteed and bound themselves *in solido,* to pay to the holders of the preferred stock of the New Consumers' Ice Company a dividend of ten *per cent., per annum* on the

par value of said stock, then the said stipulation and contract is a *nudum pactum* and not binding on Judah Hart, or on respondents, the same having been made without consideration.

They further show, that Judah Hart has never received any benefits from said contract, but that, on the contrary, the same has been expensive to him, and that he has paid out and expended large sums of money in the interest and in behalf of the said plaintiff and the parties to said contract, largely in excess of the amount herein claimed of respondents.

They represent that the business venture, known as the New Consumers' Ice Company, has been and has proven a losing venture to Judah Hart, and that he never derived any profits or benefits therefrom, but, on the contrary, lost large sums of money; that the company is now insolvent and its assets have passed into other hands, and that it would be unjust and inequitable to make respondents bear the entire loss and to permit the plaintiff to profit at respondent's expense.

For these reasons they pray that the plaintiff's demands be rejected.

On these issues the parties went to trial, and judgment was rendered in favor of the plaintiff and against the defendants, Samuel J. Hart and Helen H. Hart, for the several dividends claimed; that is to say, fourteen dividends of $290.62—one-half each or for one-half of the total amount of the dividends claimed against McDonald and Judah Hart with 5 per cent. interest on each respective dividend from the date of its maturity, on the four instalments which were due, and giving to the defendants a discount of eight *per cent. per annum* on the dividends not due from the date judgment was rendered.

No judgment was rendered against McDonald, for the reason that it appears from the record that a compromise had been entered into between him and the plaintiff during the pendency of the suit, by reason of which he was discharged. That discharge was made the subject of a special plea on the part of the defendants, Samuel J. Hart and Helen H. Hart, which is of the following tenor:

That since the institution of this suit and since the answers of defendants were filed and issue joined thereby, and since the overruling of the exception of no cause of action, plaintiff has, by transaction or settlement, received of McDonald their co-defendant, a consideration, and has released said McDonald from any and all

liability, and from any claim by reason of the matters and things set up in the petition, and has granted him an acquittance and discharge.

They represent, further, that plaintiff has prayed for a judgment *in solido* against them and McDonald, and since issue joined on their prayer, has discharged McDonald as above set forth.

They further represent that plaintiff has relieved and discharged her attachment against the property of the co-defendant, McDonald, to the prejudice of their rights, "and that thereby, and by reason of the matters and things hereinbefore set forth, your respondents are discharged from any and all liability to the plaintiff, if any such had existed, or had arisen, and that the plaintiff is estopped by plea and by conduct from further claiming anything of them, by reason of the matters and things set up in her petition."

Thereupon, they prayed, in the event that their pleas and defenses made in their answer are not maintained, and only in that event, that this, their present plea, be allowed and maintained.

From the foregoing it appears that the plaintiff as one of the preferred stockholders in the New Consumers' Ice Company, Limited, seeks to enforce against the defendants, Samuel J. Hart and Helen H. Hart, alone, a liability as unconditional heirs of Judah Hart on an obligation which is contained in a notarial act of sale, of the 2nd of May, 1894, from the liquidators of the Consumers' Ice Company, Limited, to the New Consumers' Ice Company, Limited; and that said defendants seek to exonerate themselves therefrom upon the different grounds which have been recapitulated.

The act of sale in question shows that said liquidators bargained, sold and conveyed to the New Consumers' Ice Company, Limited, in pursuance of a resolution of the board of directors of date 24th day of June, 1893, all the property of the Consumers' Ice Company, Limited, for and in consideration (1) of the issuance to said liquidators of the whole of the preferred capital stock of the New Concumers' Ice Company; amounting to the sum of $150,000, to be issued as full paid stock and not liable to assessment; (2) in consideration of the first mortgage, six *per cent.*, twenty-year bonds of the new company to the amount of $50,000; (3) in consideration of the assumption, by the New Consumers' Ice Company, of the whole of the outstanding indebtedness of the company.

In said act occurs, the following recital, to-wit:

"And now to these presents came, appeared and intervened, Judah Hart * * * and Ronald T. McDonald, who declared that they have taken cognizance of the above and foregoing act of sale, and that, for a valuable consideration, to them paid, they do hereby give their personal guarantee that for ten years hereafter, the said preferred stock hereinabove described, shall annually earn and pay a dividend of ten *per cent.* from January 1, 1894, payable semi-annually on May 1st and November 1st of each year."

Said act was signed by the liquidators and by Hart and McDonald on the date specified.

This is the obligation upon which this suit is based. It appears that said contract of sale was made in pursuance of a previous agreement between the Consumers' Ice Company and McDonald and Hart, of date February 16th, 1893, wherein it is stipulated that all the property of the Consumers' Ice Company, of every kind and character, should be sold to McDonald and Hart upon the approval of the stockholders of said company; and the said Hart and McDonald obligated themselves to purchase the same for the price and sum named therein and in the manner following, to-wit:

"The said Hart and McDonald will cause to be organized in the city of New Orleans, a corporation with a preferred capital stock of one hundred and fifty thousand dollars, which preferred capital stock shall be entitled to an annual cumulative dividend of ten *per cent.*, to be paid cumulatively, out of the profits of the company, before any of the dividends are paid to any other stockholders. Said dividends to be paid semi-annually on the 1st of May and the 1st of November. The said Judah Hart and R. T. McDonald are to guarantee, personally, that this preferred stock shall, for ten years after the organization of the said company and the delivery of the said stock as part of the purchase price aforesaid, earn ten *per cent. per annum* dividends and shall guarantee that in any year in which the earnings of the said company are not sufficient to pay ten *per cent. per annum* semi-annually, as aforesaid, they will pay the said dividends, or make up any deficiencies between the dividends earned and the said ten *per cent. per annum* dividends, and for other considerations not necessary to mention."

It further appears that in pursuance of said agreement, a charter for the New Consumers' Ice Company, Limited, was adopted, on the 21st day of June, 1893, in which it is specified "that the capital stock

of said corporation is hereby fixed at the sum of four hundred thousand dollars, divided into and represented by four thousand shares of one hundred dollars each; and shall be further subdivided into two distinct species or classes of stock known as preferred stock and common stock. (1) The said preferred stock shall consist of 1500 shares of $100 each, amounting to the sum of one hundred and fifty thousand dollars; and the corporation shall not have power to increase the amount of said preferred stock without the consent of three-fourths of all said stock, at a special meeting held for the purpose. Said preferred stock shall be entitled to an annual cumulative dividend of ten per cent. to be paid cumulatively out of the profits of the company before any dividends are paid to the common stockholders. Said dividends shall be paid semi-annually on the 1st day of May and the 1st day of November in each year. In case of the dissolution of the corporation and the distribution of its assets, the said preferred stock shall be paid in full out of the assets of the corporation, before any payment is made upon the common stock.

"(2) That said common stock shall consist of 2500 shares of one hundred dollars each, amounting in the aggregate to two hundred and fifty thousand dollars, and shall be subject to the preferred stock as above set forth.

"(3) Separate and distinct certificates shall be issued for the said preferred stock and the said common stock, showing briefly their relation to each other, and the said certificates of stock shall never in any manner be mingled.

"(4) All of said stock, both common and preferred, shall be paid for at such times and in such installments as the Board of Directors may fix, and said board shall have power to issue full paid stock, common and preferred, in exchange for labor done or property actually transferred to the corporation."

In the foregoing agreement, charter and contract of sale, are to be found the obligation upon which plaintiff's claim is founded; and in construing the character and intent of said obligation, these contemporaneous writings should be considered.

The certificate of preferred stock which was issued to the plaintiff, is of the following tenor, viz:

"This certifies that Harriet A. Hornor is entitled to 116¼ shares of the preferred stock of the New Consumers' Ice Company, Limited.

\* \* \* \* \* \*

This certificate is part of an issue of the preferred shares amounting in the aggregate to one hundred and fifty thousand dollars, which are entitled to dividends at the rate of ten *per cent. per annum* only cumulative from the first day of January, 1894, out of the earnings of the company applicable to the purposes before any dividend is declared on the common stock."

This certificate bears date 21st day of November, 1894, and is signed by the president of the corporation.

The recitals of this certificate are in exact keeping with the stipulations of the charter; that is to say, that its holders are entitled "to dividends at the rate of ten *per cent. per annum,* only cumulative from the 1st day of January, 1894, out of the earnings of the company applicable to the purpose, before any dividend is declared upon the common stock."

In other words the obligation of the corporation to the holders of its preferred stock, was to pay cumulative dividends at the rate of ten *per cent.* out of the earnings of the company applicable to the purpose before any dividend is declared on the common stock; and the obligation of McDonald and Hart, as specified in the act of sale to the corporation, was, that they personally guaranteed that the preferred stock should annually earn and pay a dividend of ten *per cent.* semi-annually for a period of ten years.

The obligation of the corporation was to pay ten *per cent.* dividends to the holders of the preferred stock from its resources and earnings; and the obligation of Hart and McDonald was to guarantee that the stock would earn and pay a dividend, irrespective of the resources of the corporation.

I.

The first question to consider is the defendants' plea of estoppel, the effect of which is alleged to be a discharge resulting from a compromise which the plaintiff made with McDonald during the pendency of the suit.

The terms of the compromise were reduced to writing, the substance of which is as follows:

That in compromise and full settlement of plaintiff's demands against McDonald, she agreed to receive on or about the 1st of August, 1898, in cash, one-half of the dividends for the year 1897 as claimed, and that McDonald should organize a corporation and sell to same

the entire plant of the New Consumers' Ice Company which was re-cently purchased by him, and as a part of the price of such sale will give its mortgage notes ·to the various preferred stockholders who are plaintiffs in this suit and other suits of like character.

This document is signed by the·plaintiff and McDonald and other parties, but it bears no date; yet, it is evident from its terms that it was executed and accepted during the pendency of this suit and after issue had been joined by the filing of the answers of all the defend-ants.

The point made and relied upon by the defendants Samuel J. Hart and Helen H. Hart, is, that the plaintiff alleges that the obligation sued on was solidary in character and that she prayed for judgment against all the defendants *in solido;* and that this averment was a judicial admission to the effect that the defendants were bound *in, solido*, and that the same had the effect of an estoppel by plea and by conduct debarring plaintiff from claiming anything of them, by reason of the discharge of McDonald· as a solidary debtor during the pendency of the suit.

In other words, the plaintiff· having judicially averred that the ob-ligation sued upon was one *in solido,* and binding each of the defend-ants, for the whole amount of the debt claimed, ·and having asked judgment *in solido* against· all the defendants, therefor, she is es-topped from pressing her claim against them, because the compromise with McDonald operated a discharge in their favor from all further liability.

The concluding part of the act of compromise is in·these words:

"All of these to be received by the plaintiffs in the above entitled and numbered causes in full satisfaction and settlement of all their claims against the said R. T. McDonald arising from the· guarantee made by him and Judah Hart that the said New Consumers' Ice Com-pany, Limited, would earn and pay a dividend of ten *per cent.* annu-ally for a period of ten years; but it is specifically agreed that nothing in this agreement shall be construed to be a waiver· of any kind, or any right of the plaintiffs in the above entitled and numbered causes against the succession or heirs of the late Judah Hart as claimed in the above entitled and numbered causes."

The plaintiff's insistense is, that giving to the allegations of her petition the fullest possible effect, ·in respect to the averment of the solidarity of the obligation, it is only an averment of a conclusion of

law and not of a matter of fact; and that the court, in rendering judgment, must necessarily look into the obligation sued on for the purpose of determining its character and to decide accordingly; and, therefore, no estoppel is raised thereon as said defendants contend.

But if the court should construe said averment as the defendants insist it should, the plaintiff contends that the reservation in the agreement that same should not be considered a waiver of any of their rights against the other defendants is a saving clause by which her rights are protected.

And this contention is supported by reference to the provision of law "that the remission or conventional discharge in favor one of the co-defendants *in solido*, discharges all the others, unless the creditor has expressly reserved his right against the latter." Rev. C. C., 2203.

In our view the plea of estoppel can not prevail, as we deem it our duty to examine and consider the terms in which the obligation sued upon is couched, in order to decide what the nature and legal effect of same are.

As, notwithstanding the plaintiff's averment of the solidarity of the defendants' obligation should be conceded to be one of fact and not of law, she would not be entitled, on that account, to take a judgment *in solido* against the defendants, Hart, on a joint obligation; hence, said averment can not, as a judicial admission, so operate in their favor as to render her aforesaid compromise with their co-defendant, McDonald, a bar against recovery, because she had averred that the defendants' obligation was *in solido*.

In so far as the defendants' plea of estoppel, based upon the averment is concerned, they do not appear to have acted thereon; nor do they seem to have been, thereby, induced to alter their previous position in this controversy.

It is a familiar principle in jurisprudence that estoppel is not favored in law, and should not be permitted, except in clear cases, to defeat the object of the administration of justice which is "to discover and apply the truth"; and that, in order to justify the application of this plea, "it must be certain to every intent, and is not to be sustained on argument or by inference." Bigelow on Estoppel, pp. 302, 311; Best Princ. Ev., p. 527; 1st Green. Ev., Sec. 22.

But the law provides that "there is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, etc." R. C. C., 2091.

Again: "An obligation *in solido* is not presumed; it must be expressly stipulated." R. C. C., 2093.

In our opinion the obligation of Hart and McDonald does not meet these requirements, as it only provides, that, "for a valuable consideration, to them paid, they do hereby give their personal guarantee, etc."; and the law declares, that "when several persons join in the same contract to do the same thing, it produces a joint obligation on the part of the obligors." R. C. C., 2080.

These principles of the Code confirm the statement that the obligation sued on is joint and not *in solido* on the part of the defendants, and defendants' plea of estoppel can not be sustained.

## II.

In the contract of February 16th, 1893, Hart and McDonald stipulated and agreed with the liquidators of the Consumers' Ice Company, that they would cause to be organized a new corporation, with a preferred capital stock of one hundred and fifty thousand dollars, which would be entitled to an annual cumulative dividend of ten *per cent.*, to be paid to the holders thereof out of the profits of the company, cumulatively and semi-annually, "before any dividends are paid to any other stockholders."

That stipulation constituted part of the consideration of the sale therein proposed by Hart and McDonald to be made of the entire assets of the old corporation.

That proposition was carried into effect by the organization of the new corporation known as the New Consumers' Ice Company, Limited, on the twenty-first of June following, by the adoption of a charter in which the capital stock was fixed "at $400,000, which was to be represented by four thousand shares of one hundred dollars each, and which was to be sub-divided into preferred and common stock—the former aggregating fifteen hundred shares, and the latter twenty-five hundred shares—it being therein provided that said preferred stock shall be entitled to an annual cumulative dividend of ten *per cent.*, to be paid out of the profits of the company, before any dividends are paid to the holders of the common stock of the company.

It contained the further express stipulation that "separate and distinct certificates shall be issued for the said preferred stock and the said common stock"; and the further express stipulation that "all of

said stock, both common and preferred, shall be paid for at such times.
and in such instalments as the board of directors may fix."

A formal transfer and delivery of the property and assets of the
Consumers' Ice Company was made, on the 2nd of May, 1894, di-
rectly to the New Consumers' Ice Company, Limited, instead of be-
ing made to Hart and McDonald, as it was originally proposed; and
certificates of preferred stock were formally issued to the plaintiff and
others on the twenty-first day of the following November.

In the act of sale there are no recitals relative to the original agree-
ment, or to the charter of the new company, except that the preferred
stock formed a part of the consideration thereof; but the obligation
which the plaintiff seeks to enforce is therein contained.

It states that Judah Hart and R. T. McDonald intervened in the
act, and declared that they have taken cognizance of the act of sale
and "for a valuable consideration, to them paid, they do hereby give
their *personal guarantee* that, for ten years hereafter the said *pre-
ferred stock,* hereinbefore described, shall *annually earn and pay* a
dividend of ten *per cent.* etc."    (Our italics.)

The intervenors gave their *personal* guarantee that the preferred
stock should, for the period of ten consecutive years after the organi-
zation of the new company, "annually *earn and pay* a dividend of ten
per cent." That personal guarantee was distinctly and expressly
given in favor of the preferred stockholders of the corporation and
was evidently intended to enure to their benefit, alone.

Having been made subsequent to the adoption of the charter of the
corporation, and prior to the issuance of the preferred stock, same was
doubtless intended as the consideration of the original agreement
with the old company, and as an inducement to the stockholders
thereof to surrender their certificates and take preferred shares in
the new organization.   This is evidenced by their personal guarantee
that the preferred stock of the new company should annually earn and
pay a dividend of ten *per cent.* and the reasonable reliance of those
stockholders was, that the *company* would earn and pay them ten *per
cent.* dividends annually; and if it did not, then the intervenors would
be personally bound on their guarantees.

The stipulation of the charter on the subject of dividends is essen-
tially distinct and different from that of the personal guarantee of the
intervenors, as it only provides that the preferred stock shall be
entitled to receive an annual dividend of ten *per cent.* to be paid

cumulatively out of the profits of the company, before any dividends are paid to the common stockholders.

We are of opinion that the personal guarantee of the intervenors fulfills all the requirements of a stipulation *pour artrui*, as same is recognized in our Code as follows, to-wit:

"A person may, also, in his own name, make some advantage for a third person the condition or consideration of the commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked." R. C. C., 1890.

There is no doubt of the fact that Hart and McDonald proposed this adventure to the Consumers' Ice Company which was, at that time, confessedly in financially straightened circumstances, with the view of obtaining control of the ice manufacturing business in the city of New Orleans; and that the shareholders fully realizing that their stock was in great peril, were willing to accept the personal guarantee of Hart and McDonald of a ten *per cent.* annual dividend for a period of ten years, taking the chances of saving their investments, if the venture should prove successful.

The subsequent acquisition of fifteen hundred shares of the preferred stock of the new company was an acceptance of the stipulation *pour autrui* on the part of the shareholders of the old company; and the issuance to Hart and McDonald of 1242 shares, each, of the common stock of the new company—2484 in all—gave them the entire control of the conduct and management of its affairs through the selection of a board of directors.

Therefore, it is apparent, that in this manner the original scheme was consummated, and the new corporation put into operation; and that same was, thereafter, operated profitably, for a period of more than two years, is shown by the fact that the preferred stockholders were regularly paid ten *per cent.* semi-annual dividends from the earnings and profits of the business.

In this manner both parties to the contract became absolutely bound by the conditions of said stipulation *pour autrui;* and the law declares that "if the third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

The plaintiff sues for its enforcement, and the defendants, Hart, allege their discharge therefrom.

Such a stipulation is an independent obligation, and not a contract

of suretyship, as it is "an accessory promise by which a person binds himself for another already bound and agrees with the creditor to satisfy the obligation if the debtor does not."

R. C. C., 3035.

The preferred stockholders do not stand in the relation of creditors of the corporation; and it is in no sense their debtor. It might have been so if dividends had been earned and not paid over. Hart and McDonald bound themselves, _personally,_ that the _corporation_ would earn and pay ten _per cent._ dividends to the preferred stockholders; and the contract in their favor became exigible because the corporation did not earn and pay over the same.

The law provides that "suretyship can not exceed what may be due by the debtor, nor be contracted under more onerous conditions."

R. C. C., 3037.

"That suretyship can not be presumed; it ought to be expressed and is to be restrained within the limits indicated by the contract."

R. C. C., 3039.

If the surety is bound as his principal is, and his obligation can not exceed what is due by him, then it might be reasonably contended, that the liability of Hart and McDonald became extinguished when the corporation became insolvent and made a judicial surrender of its assets—on the theory that the corporation was principle and they its sureties.

But this, in our opinion, would be, to read out of the act of sale their promise to _personally_ guarantee the payment of ten _per cent._ dividends to the preferred stockholders, for a period of ten years.

This, of course, is not admissible, and is not contended for; and giving to it the effect its terms clearly import, our conclusion, as before stated, is, that it is a stipulation _pour autrui_ and an independent obligation, binding the defendants jointly, and not _in solido._ Hawkes vs. Bright, 51st Ann., 79.

### III.

We are, next, to consider the answer of the defendants, Hart,—that of McDonald being omitted—to the effect that Judah Hart did not bind himself in the manner and form set forth in plaintiff's petition; that the terms of said act did not and were not intended to bind Judah Hart to guarantee the payment of dividends to the plaintiff as

set out in their petition, and that Judah Hart did not receive any consideration for any such contract or guarantee.

That it in such contract it be expressed, or be pretended to be set forth in said act, that Hart and McDonald guaranteed and bound themselves *in solido* to pay to the holders of the preferred stock of the New Consumers' Ice Company a dividend of ten per cent. "then the said stipulation is a *nudum pactum* and not binding on Judah Hart or your respondents, the same having been made without consideration."

That Judah Hart has never received any benefits from said contract, but, on the contrary, it has been expensive to him; and that he has expended on that account, large sums of money in the interest and in behalf of the plaintiff and other stockholders, largely in excess of the amount herein claimed of respondents.

. That same has been a losing venture to Judah Hart and your respondents, and that neither have derived any profits or benefits therefrom, but, on the contrary, lost large sums of money, and that the company is now insolvent and its assets have passed into other hands and it would be unjust and inequitable to make respondents bear the entire loss, and permit the plaintiffs to profit at their expense.

The argument of the counsel of defendants, Hart, on this part of the case is, that soon after the organization of the new company, McDonald, in connection with one Louis P. Hart—who is no way related to Judah Hart or his heirs—united, combined and formed what is called The City Delivery Company, which controlled all the ice companies in the city of New Orleans; and that they made a contract with the directors of the New Consumers' Ice Company to deliver its output of ice to the said City Delivery Company, at two dollars per ton; and that they, in turn, sold ice to consumers at prices ranging from three to seven dollars per ton.

That through the interposition of the City Delivery Company, McDonald and L. P. Hart collected the profits of this contract and deprived the New Consumers' Ice Company of all its resources.

That by this means, it became insolvent after the lapse of two years, being unable to pay dividends; and in consequence of which there was nothing to pay to the holders of the common stock of the corporation.

An examination of the record has satisfied us, that this argument

is substantially correct, notwithstanding there is some evidence in the record to the effect that Judah Hart had participated, to a limited degree, in the profits of the City Delivery Company, at one time.

But, in our opinion, this state of facts does not constitute a defense to the present suit; and, indeed, it is not referred to in the answer of the defendants, Hart.

The want of consideration pointed out by the counsel of defendants, Hart, and upon which their defense is predicated, seems to be, that the issuance of the common stock to Hart and McDonald was the sole consideration for their personal guarantee of the ten per cent. dividends; and that, as a resolution of the board of directors, in 1896, had declared the issuance of the same illegal and called for its restitution, the same constitutes proof of the want of consideration, and that the contract was a *nudum pactum*.

But the charter of the new company absolutely required that all stock, both common and preferred, should be paid for; and the proof in the record clearly discloses that no such payment was made by either Hart or McDonald, and that they were holders of same without consideration.

Indeed, the answer of McDonald admits that such was the true state of facts, and that he had surrendered his common stock in pursuance of the resolution of the board of directors; and the same is not denied on the part of the defendants, Hart. And the proof shows that after the adoption of said resolution, suit was brought against Judah Hart for the recovery and possession of said shares of stock, but it does not appear that same were obtained, notwithstanding that suit was subsequently discontinued.

Under this state of facts, it does not seem reasonable that the defense set up should be sustained; but if the proof had shown that Judah Hart had paid for his common stock as the terms of the charter require, it would have been a better foundation for the defense. As the matter stands, the common stock not having been paid for, it can not be considered as a consideration for the personal guarantee of Hart and McDonald.

There is nothing in the written acts, or in the parol evidence to sustain the proposition; and the act of sale admits there was a valuable consideration.

It is not alleged in defendants' answer, or shown by the proof in the record, that the preferred stockholders took any part in the wrecking

of the new corporation, nor that they were benefited by it; but the proof does show that they were aware of the fact that the shares of common stock had not been paid for, and that they made efforts looking to its surrender.

It further shows that they were interested in measures being set on foot intended for their protection, but same were not consummated; and they subsequently consented to proceedings being taken in the United States Court, by Judah Hart, for the purpose of putting the affairs of the corporation into liquidation, as the only means left whereby their rights could be protected.

In this situation of affairs, we are of opinion that there is no merit in the plea of defendants, Hart, that plaintiff was without legal or equitable right in the prosecution of this suit.

## IV.

The only remaining question for consideration is, whether the judgment appealed from can be sustained as to the amounts of dividend claimed, which were not due at the date of the institution of this suit.

Plaintiff demands payment of the entire amount of the unpaid portion of the dividends, for a period of seven years, which are covered by the guarantee of Hart and McDonald, twelve semi-annual instalments of which had not run to maturity according to the tenor of the contract; and judgment was rendered accordingly. On this question, the argument of counsel for the defendants, Hart, is, that "the failure of the New Consumers' Ice Company, Limited, to earn and pay a ten per cent. annual dividend to its preferred stockholders, did not precipitate the performance of payment of 'the obligation, if any, entered into by Hart and McDonald in the act of sale from the liquidators of the old Consumers' Ice Company to the new." If the plaintiffs are entitled to recover at all, "the insolvency of the corporation, even if judicially declared, would not, as against the defendants, Hart, cause the obligation to mature."

As authority for that proposition, counsel cite and rely upon Hawkes vs. Bright, 51st Ann., 79.

In that case the court had under consideration the question whether the immediate payment of the ten instalments of dividends became mature, because of defendant's acts; and in deciding same, we said:

"We have found no difficulty in arriving at the conclusion, in view of the terms and conditions of the defendant's obligation of guarantee, that the amount of one thousand dollars allowed in the judgment appealed from, was due.

"With reference to the remaining nine-tenths of plaintiff's claim, the question arises: Did the failure of the Knight Lumber Company, Limited, have the effect of precipitating the maturity of the defendant's obligation as guarantor under the contract before stated?

"It is contended in behalf of the plaintiff that the company is utterly unable to earn anything to pay any dividends; that it is without stockholders, officers or propeprty and exists only in name.

          \*      \*      \*      \*      \*      \*

"Conceding all that is claimed relative to the insolvency and ruin of the Knight Lumber Company, in view of the conditions of the contract, the plaintiff is not entitled to the cash payment of the whole amount due."

          \*      \*      \*      \*      \*      \*

"The defendant's obligation being personal and absolute, the insolvency of the corporation even if judicially declared would not, as against the defendant, cause his obligation to mature.

"The defendant was a vendor. He assumed to make good that which the vendee considered, or must have considered, at least, partial consideration. This is not the case of a security, but an independent obligation of one who is called upon to respond, because the property he transferred has not yielded the revenue he bound himself it would yield. The corporation, for reasons alleged, is no longer a going corporation. It appears that the corporation never can pay plaintiff the dividends defendant guaranteed it should receive. It remains that the defendant was considered and treated as an independent obligor."

In that case the District Court rendered judgment in favor of the plaintiff, for the first year's dividend guaranteed in the contract, and non-suited plaintiff's demands for the remainder of dividends, as being premature; and this court affirmed that judgment.

Therefore, counsel say, if any decree must be entered against the defendants, Hart, it must be for only the amount of the dividends due and unpaid, "and can not and ought not condemn them for dividends, the time for the payment of which, has nas not yet arrived."

Counsel for the plaintiff rely upon the following articles of the Code as supporting the judgment complained of, to-wit:

"Wherever there is a cession of property either voluntary or forced, all debts (owing) by the insolvent shall be deemed to be due, although contracted to be paid at a term not yet arrived; but in such case a discount must be made of the interest at the highest conventional rate, if none has been agreed upon by the contract." R. C. C., 2054.

But the law declares that the time given or limited for the performance of an obligation is called its *term*. R. C. C., 2048.

"What is due only at a certain time, can not be demanded before the expiration of the intermediate time, etc." R. C. C., 2052.

"The term is always presumed to be stipulated in favor of the debtor." R. C. C., 2053.

In the following article, 2054, is found the provision above referred to, that "all debts (owing) by the insolvent shall be deemed to be due, although contracted to be paid at a term not yet arrived;" and by comparison made between it and the articles previously cited, it is plain to be discerned that a *solvent* debtor is entitled to await the expiration of the full term of his contract before he can be called upon to pay.

Indeed, a subsequent article, 2057, provides, that "where a term is given or limited for the performance of an obligation, the obligor has until sun set of the last day limited for its performance, to comply with his obligation, etc."

Also, "where the term, referred to in the contract, consists of one or more years, the calendar year shall be presumed to have been intended." R. C. C., 2061.

But conceding the application of that article to corporations, and that its insolvency precipitates the maturity of all of its indebtedness notwithstanding same is made payable in installments at future dates, can it have any reference to unearned premiums which do not constitute a debt of the corporation?

The proof in this case shows, that the corporation earned no money from which the dividends embraced in this suit could be paid, and that its declared insolvency and liquidation rendered the payment of dividends by the corporation, impossible in the future.

Consequently, the personal obligation of the guarantors became exigible in favor of the preferred stockholders, but it was to pay

annually in lieu of the corporation, from year to year in semi-annual instalments.

It was the inability of the corporation to pay at all that rendered the guarantors, liable; but the insolvency of the corporation did not have the effect of precipitating the maturity of the indebtedness of the guarantors—they being perfectly solvent.

And the insolvency of the New Consumers' Ice Company, Limited, can not have the effect of precipitating the maturity of the obligation of Hart and McDonald, the term for the payment of which has not expired, for the reason that same is not the obligation of the corporation or of any of its stockholders, but the personal obligation of Hart and McDonald as individuals in favor of the preferred stockholders.

In our view the case of Hawkes vs. Bright is exactly applicable to this case, and strictly in keeping with the provisions of the Code already cited; and for the reasons stated therein, our conclusion is, that we should not recognize the insolvency of the New Consumers' Ice Company, Limited, as precipitating the future instalments of the obligation of the guarantors, Hart and McDonald.

We are, therefore, of opinion, that the judgment appealed from is correct only with regard to the dividends which fell due on the first days of May and November, 1897—this suit having been filed on the 2nd of March, 1898—and that a judgment of non-suit should be entered with respect to the remaining dividends claimed for the year 1898 and subsequent years.

It is, therefore, ordered and decreed that the judgment in favor of the plaintiff, Mrs. Harriet A. Horner, and against the defendants, Samuel J. Hart and Mrs. Helen H. Hart, be affirmed in respect to the two dividends of two hundred and ninety dollars and sixty-two and one-half cents ($290.62½) each, which matured on the first day of May and first of November, 1897, with five per cent. per annum interest from judicial demand; and that in all other respects same be reversed—the demands in respect to other dividends enumerated being dismissed as of non-suit. And that costs of appeal be taxed against the plaintiff and appellees.

Rehearing refused.