125 So.2d 168 (1960)
Marion B. BOUWELL
v.
MARQUETTE CASUALTY COMPANY and John King.
No. 21467.
Court of Appeal of Louisiana, Fourth Circuit.
December 5, 1960.
Rehearing Denied January 3, 1961.
Certiorari Denied February 15, 1961.
*169 Titche & McDermott, Bernard Titche, Jr., and Stanley McDermott, Jr., New Orleans, for plaintiff-appellee.
James J. Morrison, William W. Messersmith, III, New Orleans, for defendants-appellants.
JANVIER, Judge.
The automobile accident from which this suit results occurred on a clear day, on a paved, dry concrete highway, No. 433, in St. Tammany Parish, which highway extends *170 from the Town of Slidell to a junction with main highway No. 11, at a point near a waterway known as the Rigolets. The paved portion of this highway No. 433 is 18 feet in width and accommodates traffic going in both directions East and West. At the point at which the accident took place the highway is joined but not crossed by a county road called the Cossich Road. It is at this junction that the accident occurred.
Whether the locus is within the Town of Slidell and whether, if it is not within the limits of the town, plaintiff should have been allowed to offer evidence tending to prove that it is not, is a controversial question since, although plaintiff in his petition alleges that the location was "within the eastern town limits of the Town of Slidell," on the trial he offered evidence tending to prove that it was about a mile beyond the limits of the Town.
The car which was driven by Bouwell and in which there were two passengers, Joseph Frass and Mrs. Clara Erich, was going in an easterly direction, and the pick-up truck owned and driven by the defendant, John King, was going in a westerly direction. It was the intention of King to turn to his left into this side road and this turn would have required that he cross the other side of the highway on which the Bouwell car was approaching.
As King neared this intersection, he turned this truck slightly to his left and across the center line of the highway for a distance of three and one-half or four feet just before the Bouwell car reached that point.
As Bouwell approached the intersection at an admitted speed of about 50 miles an hour, he suddenly noticed the King truck crossing the center line and entering the lane on which he was driving. He immediately applied his brakes, but was unable to bring the car to a stop, with the result that it skidded a distance of 105 feet to the point at which the King truck was and either struck it or skidded past it out of control. After crossing the shoulder, which was about nine feet in width, it turned over and came to rest in a ditch or depression at a point 66 feet from the point at which it had left the shoulder.
Bouwell, alleging that the accident had been caused by fault on the part of King in turning his truck across the center line without making certain that it was safe to do so, brought this suit against King and his liability insurer, Marquette Casualty Company, praying for solidary judgment against both in the sum of $14,591.84.
Defendants answered, denying negligence on the part of King and averring that the sole cause of the accident was the negligence of Bouwell in losing control of his car; in driving at a speed in excess of 60 miles an hour "within the limits of the Town of Slidell," and in failing to observe that defendant, King, was turning into the Cossich Road. Defendants alternatively aver that in the event that there was any negligence on the part of defendant, King, the sole cause of the accident was contributory negligence of Bouwell.
There was judgment in favor of Bouwell against both defendants, solidarily in the sum of $4,500. Both defendants appealed. Plaintiff-appellee has answered the appeal praying for an increase in the amount awarded to $7,500.
Whether the Bouwell car struck the King truck is a disputed question, plaintiff contending that it did, and counsel for the defendants arguing that it did not. On this point we have no difficulty in reaching the decision that there was contact between the two vehicles.
One of the most interesting questions is whether or not the plaintiff was properly permitted to offer evidence tending to show that the locus of the accident was not within the limits of Slidell. This question is interesting because the record shows that if it was within the limits of the Town of Slidell, the traffic speed ordinance of that *171 Town limited speed to 20 miles per hour, whereas if it was not within the limits of the Town the speed would have been limited to 60 miles an hour by the State Traffic Regulatory Statute, LSA-R.S. 32:223.
That the speed of the car driven by Bouwell was excessive is argued by counsel for defendants who refer to two charts, one known as the Blashfield Chart (9C Blashfield, Encyclopedia of Automobile Law and Practice 413) and the other known as the Tulane Law Review Chart (14 T.L.R. 593). Referring to those charts, and there is very little difference between them, counsel argue that the speed of Bouwell must have been substantially greater than 60 miles per hour, and they say that, after skidding 105 feet to the point of contact, his car skidded an additional 75 feet before coming to rest, making a total distance of 180 feet from the beginning of the skid marks to the point at which the car turned over.
The record does not justify the conclusion that the car driven by Bouwell actually "skidded" that distance. Obviously, after striking the truck of King, Bouwell lost control of his car. No car could have actually skidded over the 9 foot grass shoulder and 66 feet of grass and weedcovered ground and the depression shown in the photographs. We feel that the actual skidding distance was 105 feet and that for the remaining distance of 75 feet the car was out of control. According to the charts if it had skidded 105 feet and had then come to a complete stop, it must have been running at a speed of between 49 and 54 miles per hour when the brakes were applied, but since it did not come to a stop at the point of impact, we conclude that when the brakes were applied it must have been running at a speed somewhat greater than 55 miles per hour. Just what that speed was we have no means of determining. The testimony of the various witnesses would fix the speed at a rate somewhat lower than 60 miles per hour. King said: "I am not much to judge cars coming up," and then he said: "I thought he was driving about 75 or 80 * * *". However, his judgment as to this could not have been good since he told the highway officer that he had "looked both ways down the highway, and didn't see anything * * *."
Bouwell said that the speed of his car was "between 40 and 45, or 50." Frass fixed the speed at approximately 45 or 50 miles per hour. Mrs. Erich, the other occupant of the car, says "* * * we were going 40 or 45 miles an hour * * *." And Mr. Cossich, who lived at that junction of the road, said, referring to the Bouwell car, that the speed was about 40 or 50 miles an hour.
We now revert to the question of whether the plaintiff should have been permitted to offer evidence tending to show that the locus of the accident was not within the limits of the Town of Slidell.
As already shown, plaintiff in his petition alleged that the locus was within the town limits and accordingly when he tendered evidence to show that it was not within the town limits counsel for defendants objected, arguing that plaintiff was bound by his allegation and should not be permitted to contradict his own judicial averment.
We are unable to agree with counsel for defendants. It must be conceded, of course, that if a party makes an allegation as to how certain things occurred when those things may or may not have occurred, he may be bound by his allegation, but we cannot agree that if a party makes an incorrect allegation concerning a fact which is not controlled by his statement, such as a mathematical calculation or a geographical location, he cannot be heard to correct that allegation. Of course, if, as a result of the correction, the other party finds it necessary to change his position, or to obtain further evidence a trial court should, and we are sure would, grant time to meet the altered allegation. Surely no court would hold a party to an allegation concerning a geographical location if that allegation is *172 obviously incorrect. If a party alleges that something took place in Town A and that that town is in the State of Mississippi whereas, as a matter of fact, Town A is in the State of Louisiana, surely evidence correcting that obvious mistake should be permitted.
In International Projector Corporation v. Maricella, 144 So. 278, 279, the Court of Appeal for the Second Circuit discussed the question of whether a party should be permitted to correct an obviously incorrect allegation:
"Obviously the only question now before the court is whether or not plaintiff, after having alleged the name of the defendant to be R. J. Maricella and cited him accordingly, can correct the initials to `A. J.' Maricella? It is the position of defendant that it cannot do so because it would thereby contradict its judicial allegations contained in its original petition. It is a fundamental principle that, upon adequate allegations of error, fraud, or ambiguity, a pleader may change his allegations or position from those taken in some previous action. As a matter of fact, the plea of estoppel is not favored in law and should not be permitted, except in clear cases. Hornor v. McDonald, 52 La.Ann. 396, 27 So. 91."
In Richardson v. Martin, 191 So. 160, the Court of Appeal for the First Circuit held that the district judge was right in permitting an amendment in an action for trespass so as to designate the correct township in which the land trespassed on was situated instead of in another township which had been alleged in error.
Possibly the trial judge should have required the plaintiff to amend his position and should have then afforded defendants an opportunity to answer the amendment, but we have no doubt that the defendants well knew that the truth was that the locus of this accident was not within the limits of the Town of Slidell and that, therefore, it would have afforded them no relief to have required the plaintiff to amend and to have then answered the amendment.
Counsel for defendants objected further to the character of proof offered to show that the locus was not in Slidell, contending that a fact of that kind cannot be proven by a highway officer and may be shown only by a surveyor or a civil engineer. The highway officer who stated that the locus was one mile outside the town limits, we think, was well aware of where the limits of the town were located and could testify on this point in such a suit as this. Where a question of title is involved it is no doubt necessary that the exact measurement be shown by such an expert, but in a case of this kind a traffic officer should know better than anyone else whether an accident has occurred within the limits of a town which is within his territory, especially when he lives in that town. But the truth of the matter is that the speed of the Bouwell car had no causal connection with the accident. The accident occurred in open country, on a straight road, and no other traffic was in sight in either direction. It was caused by the gross carelessness of King in turning across the path of the oncoming Bouwell car when it was no longer possible for that car to be brought to a stop.
Such a maneuver was obviously dangerous and in violation of the provisions of the highway traffic statute, LSA-R.S. 32:235. Referring to a situation of this kind the Supreme Court, in Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295, 296, said:
"* * * The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, *173 before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver `shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.' (Emphasis ours.) Among pertinent cases are Lane v. Bourgeois, La.App., 28 So.2d 91; Home Insurance Co. v. Warren, La. App., 29 So.2d 551; Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264; Malone v. Fletcher, La.App., 44 So.2d 352; Zurich Fire Ins. Co. of New York v. Thomas, La.App., 49 So.2d 460; and Codifer v. Occhipinti, La.App., 57 So.2d 697. In the last cited case the Court of Appeal for the Parish of Orleans aptly stated that `When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence.' 57 So.2d at page 699."
That King well knew that he was at fault is made evident by his statement to the effect that he actually did not see the car until he was turning to his left in front of it. He testified as follows: "* * * I didn't see him until I was turning." He then added that there was nothing to prevent his seeing the other car, and said: "When I saw him, I saw I couldn't make it and I began pulling this way and saw his car leave the paving." In further recognition of the fact that King knew that he was at fault we refer to the statements made to Frass and to Bouwell. Frass said: "* * * Mr. King came over to Mr. Bouwell and myself and made the statement that we needn't worry about anything, that he had insurance, and that all injuries and damage would be taken care of." Bouwell, referring to this conversation, said that King said that "he felt very sorry about the accident, not to worry about anything, everything would be taken care of, and he had insurance to take care of us."
Our conclusion is that this accident resulted solely from negligence on the part of King and that Bouwell, the plaintiff, was not guilty of contributory negligence.
We find no merit in the contention that Bouwell had the last clear chance to avoid this accident. The record indicates that when King made his turn to the left Bouwell did everything possible to avoid the accident. There was no chance whatever left to him.
Plaintiff's doctor testified that X-ray photographs showed that Bouwell sustained a fracture of the first vertebra of the lumbar segment of the spine. He required that the plaintiff wear a brace or body corset and that he be confined to bed for two weeks. He was unable to return to work until October 1, 1958, which was approximately six months after the occurrence and at that time he was still required to wear the body corset. His doctor saw him for the last time on November 11, 1958, after having seen him 22 times. He lost 98 days at work and there was nothing to contradict his statement that his pay was at the rate of $19.32 per day.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.