## MAGAZINE LUMBER CO. v. DE PAULA.

### No. 2138.

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1940.

Argued before LE BLANC and OTT, JJ., and CLAY ELLIOTT, Judge ad hoc.

Rich & Richardson, of Bogalusa, for appellant.

Rownd & Tycer, of Hammond, for appellee.

CLAY ELLIOTT, Judge ad hoc.

This suit is for damages to an automobile truck, and arose out of a collision between the damaged truck belonging to the Magazine Lumber Company, Inc., and another automobile truck belonging to Sadie De Paula. The collision took place on May 1, 1939, at a point about one-half mile south of Bogalusa, on the Bogalusa and Covington highway. The Magazine Lumber Company, Inc., alleges that the driver of its truck slowed down in front of the residence of Ed Breeland and came to a momentary stop, after making a proper signal for a left hand turn across the highway. That after looking to his front and rear, seeing no other vehicle approaching from either direction, he started to turn and when the front wheels of his truck had about gone off the pavement on the left side of the

road, a truck owned by the defendant De Paula struck its truck at about the rear of the cab, knocking it from the road and damaging it to the extent of $225.42. That the damage to its truck caused the loss of its use, and $74.58 are claimed as damages on that account, making a total of $300. That the damages sustained by its truck and the resulting loss of its use was solely due to the fault and negligence of the driver of the De Paula truck and to his disregard of the law. Damages are prayed for accordingly.

The defendant De Paula for answer denies generally and particularly most of plaintiff's averments. He then sets out that the collision occurred solely through and as a result of the negligence of plaintiff's driver. He alleges that his driver was not at fault and prays that the demand against him be refused and rejected. He then alleges that the collision having occurred solely through the fault and negligence of plaintiff's driver and his truck having been damaged to the extent of $191.62, and that the damage to his truck caused him the loss of its use, he claims $108.38 as damages on that account, making a total of $300.

The City Judge, after hearing the case, filing written reasons, rendered judgment in favor of the defendant, rejecting plaintiff's demand. The demand of the defendant in reconvention for $300 was allowed with interest and costs. The plaintiff has appealed.

Magazine Lumber Company, Inc., domiciled at Bogalusa, uses a motor truck for the purpose of delivering lumber to its customers. It sent out a load to be delivered at the residence of Ed Breeland, situated about half a mile south of Bogalusa on the east or left hand side of the Covington-Bogalusa highway going south, with George Goings as driver and Cleon Hill as helper. The Breeland residence is reached by a private driveway, leading out from the highway on the left hand side. When the truck reached the proper place, opposite the driveway, it was necessary to turn to the left and cross the highway. After overtaking and passing on his way to the turning point, a coupe driven by W. C. Waltman, plaintiff's driver, says he swung back to the right side of the road, slowed down opposite the driveway and commenced turning to the left across the road. That as he prepared to turn, he threw out his hand, looked in the mirror of his truck, his helper looked back, and not seeing anyone he turned to the left, upon which defendant's truck struck him. That he threw out his hand after passing the Waltman coupe and did not see the De Paula truck until it struck him.

Cleo Hill, his helper, testified that he looked back before his truck turned. Asked, if he looked back why he didn't see the other truck coming, his answer was that he had never traveled much, but had been on the road for years and that the truck was coming so fast he couldn't see it. He saw the coupe when he started to turn, but the truck was not along by it. That his truck, when he started to turn, was about 200 yards ahead of the coupe. That he heard the horn of the other truck, but could not see it. That the truck was right on him when he first heard its horn. The collision occurred in the day time with a clear sky, an unobstructed view ahead and behind, and at a place where the road was straight. When plaintiff's driver commenced his turn, the De Paula truck was on the left hand side of the road, coming on and so close by, that he and his helper were bound to see it, if they had looked back along the road. If they looked back they could not help seeing it coming toward them fast, on the shoulder of the road, with the view of passing them. Act 286 of 1938, Title II, Section 3, Rule 9 (a) provides: "The driver of any vehicle on the public roads, highways * * * shall ascertain before turning around upon any such road, highway * * * that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear."

Rule 10 (a): "The driver of any vehicle upon a public road, highway * * * before * * * turning from a direct line shall first see that such movement can be made in safety * * * and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement."

Rule 11 (e): "The driver of a vehicle * * * entering a private road or drive from a public street or highway shall yield the right of way to all vehicles approaching on such public highway," etc.

M. J. Mathews standing on the side of the road, saw the two trucks as they collided, but due to the place where he was standing, and the distance therefrom to the place of impact, he could not see the movements of the parties clearly. For this reason we can not have that confidence in his estimate of distance, etc., which we would have, had he been closer by and in a better position to see matters ahead.

W. C. Waltman, driver of the coupe, was closer to the two trucks and could see both of them. He could therefore give safer information on the subject. He says that he was about half a block, which we estimate at about 150 feet, behind plaintiff's truck, when it started to slow down and turn to the left across the road. He did not see any hand held out, nor hear any horn, but saw by the movement of the truck what it was preparing to do, so he slowed down, to enable it, so far as he was concerned, to turn across the road. We are not satisfied that plaintiff's driver held out his hand, sounded his horn, or gave any signal that he was about to turn to the left across the road, but suppose him to have done so, it is evident and undeniable that plaintiff's driver, before he left the right hand side of the road and commenced making his turn, was bound to see defendant's fast approaching truck close at hand on the left side of the road, if he had looked in that direction with the care that the law requires. The legal situation is the same as though he did look and see it, but did not heed it. It was his imperative duty to remain on the righthand side of the road in safety, until the approaching truck had passed, or until it was plain to him that the approaching truck would stop, until he could safely turn across the road. If it had not been for his negligence in the way stated, there would have been no collision, nor resulting injury to his truck. The judgment of the lower Court rejecting plaintiff's demand is, in our opinion, correct and to that extent it is approved and affirmed.

The defendant Sadie De Paula contends that the collision and resulting damage to his truck was not brought about by any negligence or fault on the part of his driver, but was due entirely to the negligence and fault of the driver of plaintiff's truck.

We have already said that the collision occurred in the day time, with a clear sky, unobstructed view ahead, and at a place where the road was straight. O. C. Morgan, driver of the De Paula truck, testified that at the time in question, he could see in all directions; that he was driving between 35 and 40 miles an hour, and that he had just went around and passed the coupe driven by W. C. Waltman. He could not say exactly how far the coupe was behind the Magazine Lumber Company truck at the time he passed it, but estimated it at about 100 yards. That he did not notice that the Magazine Lumber Company truck was turning to the left across the road until he was about even with the back of it. That it turned across the road without any signal, etc. Asked how near he was to the Magazine Lumber Company truck when he first saw it was turning to the left, his reply was that he was near it, right behind it; so close to it that he could not avoid striking it. He claims that when he first saw it was going to turn, he was already on the extreme left of the pavement, and when he saw that it was going to keep right on turning cross the road, he ran as far over on the shoulder as he could without going down the dump and tried to keep from hitting him. That he continued to sound his horn after passing Waltman and applied his brakes, but the collision was unavoidable; that after he saw the truck turning he ran off on the shoulder.

"Q. How far did you run on the shoulder before you applied your brakes? A. I imagine about as far as that wall over there, probably a little further.

"Q. Did you think of slowing down before then? A. Slowing down before I hit him?

"Q. Before you applied the brakes? A. *I was picking up speed to pass him. I had the right of way.*

"Q. You had the right of way yet you did run off on the shoulder? A. After I saw he was going to turn in.

"Q. And you ran awhile on the shoulder before you applied your brakes? A. No. When I ran off on the shoulder I applied the brakes.

"Q. Mr. De Paula said you ran 25 feet on the shoulder before applying the brakes; is he right or wrong? A. No, not that far.

"Q. How far? A. I say 12 or 15 feet.

"Q. Why did you wait that long before applying the brakes? A. After running off the shoulder, thinking that may be he wouldn't turn off the road.

"Q. Did it ever occur to you that you could stop and let him go across? A. No I couldn't stop.

"Q. It was your right of way? A. Naturally it was my right of way, I was going the same way he was going.

"Q. And you were insisting on your rights? A. Yes, within forty miles of speed, when there are no cars in sight. If he had given a signal and stopped or prepared to stop, it would have been different.

"Q. Did you notice Waltman slowing down? A. No sir, I did not see him slow down."

The De Paula truck driver and his helper deny that the driver of the Magazine Lumber Company truck gave them any signal or warning previous to turning across the road. Waltman says that the De Paula truck was about a half block, which we estimate at about 150 feet behind the Magazine Lumber Company truck at the time it passed him, sounding and continuing to sound its horn. Suppose no hand signal was given or horn sounded, it is evident that the De Paula truck driver saw the Magazine Lumber Company truck in his immediate front as soon as he passed the Waltman coupe, and that he, at the same time, concluded that the coupe and the Magazine Lumber Company truck were close enough together to be passed, one after the other, without leaving the left hand side of the road. He also saw, at the same time, the Magazine Lumber Company truck turning across the highway in his immediate front and the danger of trying to pass ahead of it, while this movement was going on. He claims that he was so close to it at the time that he could not stop or slow down his truck sufficiently to avoid striking it, but we do not find that such was the case. The testimony of J. E. Branch, deputy sheriff, is accepted as true. He reached the scene of the wreck a few minutes after it had occurred. He says without contradiction that tire marks made by the De Paula truck on the shoulder of the road showed that its brakes had been applied apparently 36 feet north of where the two trucks came together. That the markings showed that the two left wheels of the De Paula truck went about a foot off the pavement, on the shoulder of the road, back up at a distance of maybe 25 feet north of the place where the brakes had been applied, thus showing that the two left wheels of the De Paula truck went off the pavement onto the shoulder of the road about 60 feet north of the place of impact. An automobile driver ordinarily keeps on the pavement for the purpose of passing automobiles ahead. We will therefore presume, in the absence of any reason appearing to indicate otherwise, that the De Paula truck driver realized, at the time of or soon after passing Waltman, that an emergency existed, due to the turning movement of the truck ahead. He was about 60 feet distant, but of course he had previously become aware of the situation for an appreciable time before leaving the pavement. The distance at the time was sufficient, if he had been on his guard and had his truck under control, to have stopped or slowed down enough to have avoided a collision. He resolved against stopping and determined instead to increase his speed, get over on the shoulder of the road and run ahead of it. Seeing that speed would fail, he applied his brakes, which also failed his purpose, and the collision and resulting damage to his truck took place.

Act 286 of 1938, Title II, Section 3, Rule 7, clause (c), reads as follows: "The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety; provided, that whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."

It is in our opinion manifest error to hold in this case that the prima facie liability of the overtaking and passing vehicle has been overcome by the evidence. We are satisfied from the evidence that if the driver of the De Paula truck had proceeded carefully and guardedly after passing the Waltman coupe, no collision would have resulted from the carelessness and negligence of the driver of the Magazine Lumber Company truck; that the contributing negligence and fault of the driver of the De Paula truck, produced and brought about the damage sustained by each.

For these reasons that part of the judgment of the lower Court which allows defendant's demand in reconvention is now

refused and rejected. It is ordered that the cost of appeal be paid by the defendant Sadie De Paula, all the cost in the lower Court is to be equally divided and equally paid by the plaintiff and defendant.