The plaintiff appeals from a judgment in the district court which rejected his demand for damages in an action in tort, and dismissed his suit.
The demand arose out of an accident which occurred on July 26, 1944, at about 3:50 p.m., on the Plank Road just north of the city limits of the City of Baton Rouge at the moment he was travelling north on his motorcycle and the defendant, Dudley J. Bourgeois, had been going south in his Ford 4-door sedan. On arriving almost in front of the property listed under municipal No. 3424 Plank Road, where he intended to stop, the defendant proceeded to make a left hand turn in the road and before he could get across the paved slab of the highway his car was run into by the plaintiff's motorcycle. As a result of the impact plaintiff was thrown from the seat on to the pavement and sustained severe injuries about his head and face and his motorcycle was badly damaged.
Plaintiff alleges that defendant made the left hand turn across the highway without warning and at a time when he was unable to stop his motorcycle and avoid running into the automobile. Consequently he alleges that his injuries and the damage to his motorcycle were caused solely and entirely by the gross negligence of the defendant in handling his automobile as well as his reckless disregard for the rights of others on the highway.
Plaintiff suffered a fractured jaw bone, in two places, a broken nose, loss of two teeth, a cut on the chin and general bruises and contusions, for all of which, including the pain and suffering he endured, he seeks to recover the sum of $5700. In addition he claims $1000 for loss of salary as a result of his injuries, $154, the amount he had paid on his motorcycle and $162.92 for medical expenses, making a total of $7016.92.
In answer to the plaintiff's petition the defendant admits that he made a left hand turn across the highway at the point indicated and that there was an accident and the resulting injuries to the plaintiff but he generally denies all other allegations of the petition on which liability against him is predicated. Further answering he avers that the accident and the injuries sustained by the plaintiff as a result was due to no fault of his whatsoever but solely and entirely to the gross negligence and carelessness of the plaintiff himself.
He alleges that he was travelling at a slow rate of speed as he neared the point in the road where he intended to make the turn, indicated his intention to make the turn by holding out his hand and all traffic to his rear came to a stop as well as all visible traffic ahead. He thereupon started across the east traffic lane of the road and the front end of his car had almost reached the east edge of the concrete slab when plaintiff's motorcycle ran into its right side resulting in damage to both vehicles. He further alleges, according to information, that the plaintiff was driving his motorcycle at a gross and excessive rate of speed and in a careless and inattentive manner; that his view of the motorcycle was obstructed by the automobiles headed north ahead of it for the reason that plaintiff passed these automobiles on the east or to their right side, all in violation of the traffic laws of the State, and consequently he could not see it until it had passed beyond the automobile which was parked fartherest north.
In the alternative defendant pleads contributory negligence on the part of the plaintiff charging him with driving in excess of the speed limit fixed by the city ordinance of the City of Baton Rouge, in driving his motorcycle in a careless and reckless manner and in violation of the laws of the State and of the City of Baton Rouge, by passing on the right side of the cars parked ahead of him; in not timely observing and heeding his signal to make a left hand turn across the road and finally *Page 93 
in failing to stop his motorcycle to the rear of the traffic ahead of him which had already stopped to honor the signal for a left hand turn.
The trial judge handed down a short written memorandum in which he stated that he found no reason to change the opinion he had expressed at the conclusion of the trial concerning the plaintiff's negligence. He further stated that plaintiff's version of the accident was corroborated by only one witness and that, he says, was "done in a very unsatisfactory fashion." On the other hand he found that defendant's version was corroborated by his fellow passenger in the car and by another party who was in a car three cars removed to the rear of his. The proximate cause of the accident he found to be plaintiff's failure to honor the defendant's right to cross from the west to the east side of the road after he had stopped and given the proper signal and all other traffic going both north and south had honored the signal. He also found from the testimony that plaintiff had driven his motorcycle ahead of the traffic which had stopped on the east lane of travel, headed north, on the right side of that traffic. He virtually agreed with all the points raised on behalf of the defendant and with none raised on the part of the plaintiff.
We find ourselves unable to agree with the district judge that the testimony is as positive as he found on any one point in the case except it be that the defendant was actually making a left hand turn in the highway and that the motorcycle of plaintiff did run into the right hand side of the car right about midway of it with the resulting accident and damage sustained by the plaintiff. It seems to be conceded also that traffic on the Plank Road at that hour of the afternoon is usually heavy and that the automobiles following the defendant's car going south did stop in answer to some signal or warning given by him to see what he intended to do. The important points in the case, and those on which we find that there is a considerable amount of testimony and many circumstances which favor the plaintiff, relate to the traffic that was proceeding north on the highway at that time, in close proximity to the point where defendant intended to make his left hand turn, and whether that traffic had stopped, as he says, to honor his signal and also whether plaintiff passed that traffic on the right hand side or to the east of it. Another point which may be said to be very important arises out of the fact that even if plaintiff did pass to the right of traffic which may have stopped ahead of him, the passenger riding in the defendant's car with him, and who was his witness, stated that when he saw the motorcycle it was from 25 to 30 feet away and although he saw him from that distance, defendant himself, by his own admission, did not see him until it was but three feet away.
Some stress is placed by counsel for plaintiff on the point that the defendant did not give a proper left hand signal but we do not attach much importance to this as we do not think that could be said to be a proximate cause of the collision.
On the question whether traffic approaching from the south on the east lane of travel on the highway stopped to honor defendant's signal, we find, in the first place, that defendant's own testimony on this point is only hesitatingly corroborated by the witness Doyle Suarez who was in the car with him, for it took considerable questioning before he would say that the cars going north were stopped when the defendant started to make his turn. His testimony is not a bit more convincing than that of the witness who corroborated plaintiff on this point and whose testimony the district judge found to be unsatisfactory. This witness is Mrs. George Janssen who lives at Eldora, Iowa. She was living in Baton Rouge at the time this accident took place but as she had moved back to Iowa when the trial was had, her testimony was taken by deposition under a stipulation of counsel. In her deposition she states that she was walking in the 3400 block on the east sidewalk of Plank Road that afternoon, that she saw the motorcycle proceeding at what she thought was a moderate rate of speed and saw no other vehicles proceeding in the same direction that it was at the moment. She was about 100 feet away and it would seem plausible that from that distance she would be able to tell whether there were cars in front of the motorcycle or not especially *Page 94 
if, as she says, she could see the motorcycle itself coming north. Naturally if there were no automobiles ahead of it she did not see the motorcycle pass either to the right or to the left of any. She appeared to be positive in her recollection of what she saw and there is no intimation on the part of anyone that she is not worthy of belief. The only part of her testimony which may be said to be at any variance at all with the plaintiff was that just a second before he hit the automobile he tried to turn his motorcycle to the west, but this part of her testimony has no relation whatever to the point whether there was traffic stopped ahead of him and whether he passed that traffic to the right, out of view of the driver and passenger in the defendant's car. It may be too that she was right and that probably plaintiff, in a final effort to avoid running into the automobile, did pull his motorcycle a bit to the left and on seeing that the lane of traffic there was blocked, he did not follow through with the effort.
A circumstance which has a strong bearing on the point as to whether there were some cars stopped ahead of the plaintiff arises out of the facts found in the record concerning the skid marks said to have been made by his motorcycle. On this point we find that the preponderance of the testimony favors the plaintiff. Defendant is the only person who testified that the skid marks were on the extreme east portion of the paved slab, about two feet from the edge, and that they extended thirty paces or ninety feet south from the point of impact between the two vehicles. He says he stepped it off with one of the two State troopers who came to the scene of the accident about five minutes after it occurred. This State trooper, Frank M. Stafford, differs with the defendant however both with regard to the point in the lane of travel where he saw the skid marks and also the length they extended going south. He places them about in the center of the east lane of travel and said that they extended thirty feet south of the point of collision. That is what he put in the report of the accident made by him shortly following the time it happened. Besides, this witness stated that he found the skid marks to be in a direct line without any skips at all which would indicate to him that the motorcycle was not travelling at a very fast rate of speed when the brakes were applied. Trooper J.H. Green also testified that the skid marks were about in the center of the east lane of travel. He did not measure them himself but says that he was with Trooper Stafford when he measured them and found them to be about thirty feet.
Defendant's witness Suarez, on cross-examination, states that he did not measure the length of the skid marks but that he saw plaintiff and Trooper Stafford stepping the distance and it appeared to him to be about thirty paces. He states that he thought they were about two feet from the east side of the pavement but when asked if it could have been four feet he answers that it could have been more than four but he would say that it was less than four feet. Less than four feet of course could make it more than two and in fact might be such distance as to conform rather reasonably to the testimony of the troopers both of whom said that they were in the center of the east lane of travel which would be four to five feet from the east edge of the paved slab. All of this is why we have been led to say that the preponderance of the testimony places the skid marks certainly more than two feet from the east edge of the paved slab and if they were anywhere near the center of the east lane of travel it would certainly appear that for thirty feet at least, plaintiff did not pass around any parked automobiles on either side. And if they extended ninety feet as the defendant contends, and there were cars parked on the east lane of travel at that point, it would be physically impossible for them to have been made near the center of that lane for the sixty feet beyond the thirty feet referred to.
Finally, there is the very important consideration that if there was any traffic at all parked at that point on the road, certainly the driver or passengers, if any, in the first of the cars was face to face with the collision between the two vehicles and that car, as well as any others, could not proceed north until the east lane of traffic had been cleared. It seems almost unexplainable that some one from out of that traffic, especially from the first of any automobiles *Page 95 
parked there, would not have given a statement to the investigating officers or been found to testify at the trial of the case.
But let us assume that there were some cars travelling north which had either come to a stop or had slowed down noticeably some thirty to forty feet south of the point where the defendant intended to make his left hand turn and if, as seems to have been definitely proven, plaintiff's motorcycle appeared on the highway thirty feet south of him, there is no reason why he should not have seen it, as did his fellow passenger, Suarez, and why upon seeing it, he did not hold his car motionless, or if it had been put in motion, why he did not stop it again to let the motorcycle, which under the law had the right of way over him, pass on.
The law in the case is very plain and cannot seriously be disputed. It is laid down in the State Highway Regulatory Act, the pertinent provisions being Rule 9(a) Sec. 3 of Act No. 286 of 1938. That rule reads as follows: "The driver of any vehicle on the public road, highways and bridges of this state shall ascertain, before turning around upon any such road, highway or bridge, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear." More pertinent to the case still is Rule 11(e), which provides that "The driver of a vehicle entering a * * * private road or drive from a public street or highway shall yield the right of way to all vehicles approaching on such public highway and to all pedestrians properly walking thereon." (Italics ours.)
[1] In addition to the duties which the statute itself placed on this defendant the jurisprudence leaves no doubt as to the care he had to observe in making such a maneuver on a heavily travelled public road. There is hardly a case in which such a maneuver is involved that it is not referred to as a most dangerous one and one requiring the utmost care and attention in completing. This court, in the last few years, has had to deal with a number of cases like this and in each it was stated in the opinion that the maneuver is a very dangerous operation, requiring care and caution and the responsibility for seeing that it can be made in safety is always placed upon the driver desiring to make such a turn. He is required to ascertain that there is no traffic approaching from either side and if there is, he must yield the right of way to such traffic. He can only ascertain if there is no such traffic by keeping a careful look-out. If he does not, necessarily he is guilty of negligence. If he looks at a time when looking is not effective and he does not see the traffic he should see, likewise, under the law he is negligent for having failed to see what he should have seen. That is the law as laid down in some of these late cases, most notably those of Murray v. Kaufman, La. App.,22 So.2d 750, Grasser v. Cunningham, La. App., 200 So. 658, and Magazine Lumber Co. v. DePaula, La. App., 197 So. 806.
The first of these three cases appears to be particularly appropriate as the facts are very similar to those found in this case. Two ladies occupied the same position in the car as did the defendant and his fellow-passenger in this case and nothing was found in their testimony to explain their failure to have seen the motorcycle before it was practically on them. In the present case the passenger says he saw it when it was thirty feet away but the driver himself did not until it was about three feet from him. His explanation is that he heard a noise like the screeching of tires and he looked north to see what it might have been. That of course does not excuse him, especially as the screeching noise came from the south where he should have been looking instead, because by his own testimony all traffic to the north back of him had come to a full stop and had honored his signal.
[2] Under the facts as we find them, and certainly under the law, defendant should be held liable as plaintiff himself was not guilty of any negligence which contributed to the accident. It is shown that he was not going faster than 25 or 30 miles an hour which was slower than the approaching vehicle involved in the accidents *Page 96 
in the other cases referred to and in which the driver was held not negligent. It is conceded that the accident took place beyond the corporate limits of the city of Baton Rouge and therefore the speed ordinance of the city did not apply. We entertain a serious doubt that the plaintiff passed on the right of any traffic that was stopped ahead of him and even if it be assumed that he did, he certainly was in the clear in front of the defendant's car for a distance of thirty feet and had the right of way to proceed against defendant's intention or attempt to make a left hand turn in front of him. The facts show that the automobile was still in the east lane of travel on the paved slab when it was run into and in view of the traffic which blocked the west lane of traffic to the plaintiff he had no chance to pass to the rear of defendant's car and avoid striking it.
[3] There seems to be no serious dispute about the severe injuries sustained by the plaintiff and that he is entitled to rather substantial damages. The biggest item is for his injuries and his pain and suffering. He proved loss of salary for about two months at $225.00 a month. His motorcycle seems to have been badly damaged and all that he claims is the amount he had already paid on it, that is the sum of $154.00 which he is entitled to recover. His medical bills are alleged in his petition to be $62.92 and $100 additional which it would become necessary for him to incur. There is no testimony however to support this extra $100. We believe that for his injuries and his pain and suffering an award of $4000 is proper. The other items of $450 for loss of salary, $154 for what he lost on his motorcycle and $62.92 for medical and hospital expenses, amount to $666.92. Altogether therefore he is entitled to recover the sum of $4666.92 and judgment will accordingly be rendered in his favor and against the defendant for that amount.
For the reasons stated it is now ordered that the judgment appealed from be reversed, set aside and annulled and it is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, William D. Lane and against the defendant, Dudley J. Bourgeois, in the full and entire sum of $4666.92, with legal ininterest from date of judicial demand, and for all costs of this proceeding.