### GRASSER v. CUNNINGHAM et al.
### No. 2213.

Court of Appeal of Louisiana. First Circuit.
March 4, 1941.

between 5:30 and 6 o'clock P. M. on Highway 51 at Arcola, Tangipahoa Parish. Included in the claim for damages is the sum of $1,118 for expenses in treating her injuries in the way of doctor and nurse bills and hospital and ambulance service. On objection being offered to proof in support of these expenses, the objection was sustained on the ground that these items were obligations of the community recoverable by plaintiff's husband who is not a party to the suit. No complaint is made as to the ruling and this part of the claim for damages is no longer an issue in the case.

Miss Watson was driving a car owned by Cunningham with his consent and permission, and they were traveling north on the above-mentioned paved highway, Cunningham sitting beside Miss Watson on the front seat. They were going to Miss Watson's home a short distance 'west of this paved highway, and in doing so, it was necessary for them to turn left into a gravel road leading west from the highway at Arcola. Plaintiff was coming south in a car driven by her husband on his right-hand side of the pavement, and the Grasser car was struck on its left front side some 20 feet south of this intersecting gravel road by the Cunningham car as it attempted to turn left into this gravel road. The Grasser car remained on its side of the road, and just before the impact, the driver pulled his car to the right so that when the collision occurred the right wheels of the Grasser car were off the pavement, and the Cunningham car was 2 or 3 feet over the center line when it struck the Grasser car.

Both Cunningham and Miss Watson are charged with negligence (the former sitting beside Miss' Watson and directing and assisting her in driving) in that they cut across in front of the Grasser car in a long sweeping turn to the left without warning before they reached the intersection; and in their failure to keep a proper lookout for on-coming traffic and without having their car under proper control in making a left turn into a side road and across the traffic lane of the Grasser car.

There is no answer in the record, but we assume that an answer was filed as the case went to trial and a judgment was rendered in favor of the plaintiff and against both defendants in solido for $2,500. Miss Watson took a devolutive appeal, but the other defendant did not appeal and the case is not therefore before us as to him.

S. S. Reid, of Amite, for appellant.

Ponder & Ponder, of Amite, for appellee.

OTT, Judge.

The plaintiff sues J. D. Cunningham and Miss May Watson for damages in the sum of $16,118 for personal injuries suffered by her when the car in which she was riding, driven by her husband, collided with a car driven by Miss Watson on January 22, 1939,

We assume that the defense is based on a denial of negligence on the part of the defendants and a plea of contributory negligence on the part of plaintiff's husband in driving through the unincorporated village of Arcola at a greater rate of speed than 25 miles per hour and without having the lights on his car burning, contrary to the highway regulatory act. We assume this to be the defense from the arguments advanced by counsel on both sides in their briefs. In the brief of counsel for plaintiff, we note that the statement is made that "no well-defined defense is offered", etc. But counsel proceeds to show negligence on the part of defendants in causing the accident and makes only a brief reference near the end of his brief to certain cases "to show that the plaintiff's (evidently meaning defendants') plea of contributory negligence is untenable". On the other hand, defendants' brief is devoted largely to showing that the accident was caused by the negligence of Grasser in the two respects above mentioned.

■ Ordinarily, we would be inclined to remand the case for completion of the record by supplying the answer of the defendants, or for the purpose of explaining its absence from the record, however, as no objection is made on this point and as we assume from the briefs that an answer was filed setting up the defenses above indicated, we have concluded to decide the case on the assumption that such an answer was filed.

■ The evidence convinces us that Miss Watson was guilty of negligence in attempting to make a left-hand turn into this gravel road in the face of this on-coming Grasser car. Making a left turn on a much-traveled highway is a very dangerous operation, requiring great care and caution. The responsibility for seeing that such a left turn can be made in safety is placed upon the driver desiring to make such a turn. The law requires a driver to ascertain before making such a turn that there is no traffic approaching from either direction which will be unduly or unnecessarily delayed and requires him to yield the right of way to such approaching traffic. And when a driver intends to turn to his left to enter an intersecting road, he shall approach the intersection in the lane for traffic to the right of and nearest the center of the highway, and in turning shall pass beyond the center of the intersection, passing as closely to the right thereof as

practicable before turning the vehicle to the left. Act No. 286 of 1938, Section 3, Rule 9, paragraphs (a) and (b), Dart's Gen. Stat. § 5214.

The evidence in this case shows that Miss Watson not only did not go to the right of the intersection in making the left turn, but she attempted to cut across several feet below the south line of the intersecting gravel road, and the impact occurred after Grasser had passed the entire intersection. The reason given by the defendants as to why they did not see the Grasser car before making the turn is not very convincing. Miss Watson testified:

"Q. Did you look to the north before you turned? A. I was making my turn taking care of both sides, I asked Mr. Cunningham if I was in the clear and he said yes.

"Q. So when you turned you asked Mr. Cunningham if you were in the clear and you turned? A. Yes, sir."

Cunningham testified that he did not see the Grasser car. The paved road at this point is perfectly straight, and we see no reason for these defendants not to have seen this on-coming car regardless of whether or not the lights on it were burning.

■ In the absence of the answer, we do not know if the defendants charge plaintiff with independent negligence in not warning her husband of his excessive speed and in driving without lights, or whether they impute his negligence to her from the nature of their mission and the legal effect arising therefrom. However, as we have concluded that Grasser was not guilty of negligence contributing to the accident, it follows that no such negligence could bar plaintiff's recovery.

Grasser was going from 40 to 50 miles per hour. This is in excess of the speed limit of 25 miles per hour fixed by Rule 4, Section 3 of Act No. 286 of 1938, Dart's Gen.Stat. § 5207, for driving motor vehicles through an unincorporated village, such as Arcola. However, it is obvious that this speed was not a contributing cause of the accident, as the Grasser car could as well have been struck in the manner it was while going 25 miles per hour just the same as it was going 40 to 50 miles per hour. To say that the Grasser car would not have reached the point of impact as soon as it did had it been going only 25 miles per hour may be true, but to say that the accident would not have occurred had

the Grasser car been going only 25 miles per hour is pure speculation.

■ The fact that an automobile was going at a greater rate of speed than allowed by law at the time of a collision will not bar a recovery for injuries sustained in the collision if such excessive speed was not a proximate cause of the accident. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2611, p. 399.

The law requires a motor vehicle operated on the highways of this state to have on its lights one-half hour after sunset, or at any other time when there is not sufficient light to render clearly discernible, a person on the highway a distance of 200 feet. The evidence is not clear as to the exact time this accident occurred, but it appears to have been between 5:30 and 6 o'clock P. M. It is therefore doubtful if the accident occurred more than a half hour after sunset as sunset on January 22d was around 5:20 and one-half hour thereafter would be almost 6 o'clock.

[6] Moreover, there is considerable dispute as to whether or not Grasser had on his lights when the collision occurred. He and his wife testified that he did have on the lights, while both defendants testified that they did not see any lights on this car, and one or two other witnesses say there were no lights on this car. In any event, assuming that Grasser should have had on his lights but did not have them on, we do not think his failure to have on his lights was a proximate cause of the accident. The defendants testified that the lights on their car were burning and, if so, there is no reason why they should not have seen the Grasser car in ample time to avoid making a left turn right in the face of it. The negligence of a driver of a motor vehicle in failing to have on his lights as required by law is not in itself sufficient to preclude recovery for injuries sustained in an accident, unless such failure is one of the proximate causes of the accident. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., § 2632, p. 413.

We conclude that the sole and proximate cause of the accident was the failure of the defendants to take the proper precautions and keep the proper lookout in attempting to make this left-hand turn into a side road in the face of on-coming traffic.

The plaintiff received a very severe injury. She sustained a transverse fracture of the left femur, a fracture of the base of the fifth metacarpal extending into the wrist joint, and a fracture through the distal portion of the shaft of the fourth metacarpal. She also suffered severe cuts on her lips and face and contusions on other parts of her head and body. She was in the hospital for a month or so and was confined to her bed for several months. She was wearing a brace at the time of the trial and could not walk without crutches. Her lips were badly cut and permanent scars were left on her face and left hand.

■ Considering the nature and extent of her injuries we think the plaintiff is entitled to an increase in the amount of the award in order to bring it more nearly in line with the award in other similar injuries. We have decided to increase the award to $3,500.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby amended as to Miss May Watson by increasing the award in favor of plaintiff and against said defendant from $2,500 to $3,500, and as thus amended the judgment is affirmed.