This suit, brought by Joseph S. Middleton, plaintiff, for $3,060.00 to compensate him for personal injuries and medical expenses arising out of an automobile accident which occurred on October 9, 1939, at Kenner, Louisiana, against Rheem Manufacturing Company and its liability insurance carrier, American Automobile Insurance Company, was consolidated for trial with the action of Michelli versus these same defendants,34 So.2d 264, in which an opinion and decree was handed down by us this day. We held therein that the accident resulted from the negligence of the truck driver of the Rheem Manufacturing Company.
The facts and issues presented are the same in both suits, with the exception that the defendants, as an additional defense in this matter, pleaded that "* * * immediately after the collision, plaintiff made demand upon the Hartford Indemnity Insurance Company, the insurance carrier of the Michelli car; that the said insurance company, recognizing the negligence of the driver of that car, settled or compromised with plaintiff; and that therefore, in the alternative, respondents aver that the settlement by plaintiff with the Hartford Indemnity Insurance Company is a bar to any claim against respondents."
In the alternative, defendants further prayed that if the truck driver was guilty of negligence, which they deny, and that if the release executed by the plaintiff is not a complete bar to his claim, then the amount of the settlement should be credited against any judgment rendered in favor of plaintiff.
There was judgment in the lower court for $910.00 in favor of plaintiff and against both defendants, subject to a credit of $500.00 already "collected by him from another source."
Defendants have taken this appeal from the judgment, and plaintiff has answered the appeal praying that the credit of $500.00 be disallowed.
The evidence shows that after the accident Middleton made demand upon Joseph T. Michelli and Hartford Accident and Indemnity Company, for payment of his damages, and the insurance company compromised for $500.00 any claim which Middleton *Page 272 
had against Michelli and Hartford Accident and Indemnity Company.
In the release which Middleton executed, there appears the following language: "It is further agreed and understood that the undersigned hereby expressly reserves all of his rights, causes of action, claims and demands against Rheem Mfg. Co. and its insurer, American Automobile Ins. Co., to claim and sue for damages for personal injuries and expenses sustained by him in this accident, and releasing and discharging only Hartford Accident and Indemnity Co., Burroughs Adding Machine Co. and J.T. Michelli."
In the lower court the defendants contended that the reservation is inadequate, and that Rheem Manufacturing Company and American Automobile Insurance Company were fully released from any liability to Middleton.
[1] There is no merit in this contention, as Middleton specifically reserved his rights against the defendants. The Supreme Court said, in the case of Landry v. New Orleans Public Service, Inc., et al., 177 La. 105, 147 so. 698, 700:
"Irrespective of whether under article 2203 of the Civil Code the discharge of one joint tort-feasor discharges his cotort-feasors, or whether under the facts Gumbel and Mrs. Moses and the defendants are solidarily liable to plaintiff, we think that plaintiff in receiving the payment of $2,500 from the insurance company did reserve his rights against the city of New Orleans and the New Orleans Public Service, Inc.
"It must be remembered that there is nothing sacramental about the form in which such a reservation shall be made. No one is presumed to renounce a right unless it clearly appears that he intended to do so. And the intention to reserve a right against codebtors may be inferred from any expression in the release of one co-debtor negativing the intent to release the other codebtors. Cusimano v. Ferrara, 170 La. 1044,129 So. 630.
"We are unable to agree with the Court of Appeal that under the agreement with the insurance company, Landry divested himself of all rights and claims against the other debtors, subrogating the insurance company to such rights and claims."
The injuries sustained by Middleton were described by Dr. John Redding, in a written report of his examination of plaintiff, as follows: "External injuries consisted of multiple lacerations about the left eye, discoloration of the left orbit, multiple contusions and abrasions of both knees, and a laceration of the left knee. The lacerations about the left eye were located on the upper lid, in the eyebrow, and on the side of the bridge of the nose. There were three separate cuts which ran in a transverse direction, and were roughly parallel. The laceration on the upper eye lid was about three quarters of an inch in length. There was a shorter laceration above this in the left eyebrow, and there was a longer one which began in the eyebrow and extended down on to the side of the nose. It did not extend lower than the upper third of the nose. All of these wounds had been sutured, but they were all healing without any evidence of infection or other complication. There was a moderate amount of discoloration and swelling of both the upper and lower eye lids. * * * I feel that the lacerations will leave permanent scars. One of these on the eye lid will be visible only when the eye is closed. The shorter one and a good part of the top laceration are within the eyebrow, and should not be greatly disfiguring. The medial end of the top laceration, however, will be visible on the lateral surface of the upper part of the nose. * * *"
[2] Defendants have not disputed the amount awarded by the lower court, and we do not find that it is excessive.
In the answer to the appeal plaintiff complains of the credit of $500.00, representing the amount received in the compromise, and we are urged to amend the judgment to the extent that the credit be disallowed.
[3] We notice that the answer to the appeal was filed on December 1, 1947, and the matter was argued and submitted to us on the following day. It is our opinion that we cannot take any notice of or give any consideration to the answer, for it was not timely filed — in the Court of Appeal for *Page 273 
the Parish of Orleans the answer to an appeal should be filed at least three days before the date fixed for the argument, otherwise the answer shall not be received.
Code of Practice, Art. 890, provides as follows: "If the appellee neglect to answer to the appeal within the time allowed him the appellant may have the cause set down for argument, but the appellee shall be allowed to file his answer until the day of argument if he only prays for confirmation of the judgment with costs; but if he demand the reversal of any part, or damage against the appellant he shall file his answer at least three days before that fixed for the argument otherwise it shall not be received provided, that in the courts of appeal for the several circuits of the State such answers to appeal shall be allowed filed before argument within the first three days of the actual sittings of any regular session of said courts of appeal."
In the Succession of Solis, 10 La. App. 109, 119 So. 768, 770, we said:
"Appellee filed an answer to the appeal on December 12, 1928. The case was fixed for and argument was had on the day following. Objection was made that the answer came too late, because, under the provisions of article 890 of the Code of Practice, an answer to an appeal must be filed at least three days before the date of argument. The contention is made by appellee that, by the amendment of Act 103 of 1908, the answer may be filed at any time within three days of the actual sittings of the court. Unlike the Courts of Appeal of the First and Second Districts, this court sits only in the parish of Orleans, and its sittings are fixed by the Constitution, article 7, § 76, p. 59, as beginning not later than the first Monday in October and ending not later than the 30th day of June in the year following.
"In view of the foregoing, this proviso can have no application to this court, except perhaps in so far as the case is fixed within the first three days of the sittings beginning in October are concerned, but, under any circumstances, it cannot possibly apply to the case at bar. The answer can therefore receive no consideration at our hands."
[4] We cannot revise a judgment in favor of one who has not himself appealed and who has not made timely answer to the appeal of his adversary.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.