This is a suit brought by plaintiff, Joseph T. Michelli, against Rheem Manufacturing Company and its liability insurance carrier, American Automobile Insurance Company, seeking to recover for personal injuries, for damage to his automobile, and for certain medical and other expenses, resulting from an automobile accident. The amount sued for is $3,581.88.
This case was consolidated with two other suits arising out of the same accident, so as to avoid repetitious trials. The other suits are entitled: Middleton v. Rheem Manufacturing Company and American Automobile Insurance Company,34 So.2d 271, and Brousseau versus the same defendants, 34 So.2d 273, both decided by us this day.
After a trial on the merits there was judgment in favor of plaintiff and against both defendants for the sum of $1,831.88. Defendants have appealed.
The undisputed facts are that on October 9, 1939, at about 7:30 o'clock, A. M., a truck and semi-trailer of the Rheem Manufacturing Company, having an over-all length of 31 feet, weighing 8,400 pounds, and loaded with 168 steel drum was being driven by Joseph P. Smith, the employee of said defendant, on his company's business, in a northerly direction, or towards Baton Rouge, Louisiana, on its right-hand side of Airline Highway (U.S. No. 65), a two-lane, paved highway, within the corporate limits of the Town of Kenner, Louisiana. An automobile driven by Joseph S. Middleton was following, the truck. Another automobile, owned and being driven by plaintiff, Joseph T. Michelli, was proceeding south, on its right-hand side of the highway, or toward New Orleans, at a speed of between 50 and 60 miles an hour. The truck's driver, upon reaching Lyons Street, which is a gravelled or shelled street, made a left turn to leave the highway and enter the said Lyons Street. This street runs at a right angle to the highway, and enters it from the west or river side, but does not cross the highway. When the cab of the truck had entered Lyons Street, and the semi-trailer had cleared the east traffic lane of the highway, Michelli, to avoid a collision with the truck, swerved his vehicle to the left to pass behind the trailer, and collided head-on with the Middleton automobile which had been following the trailer. The weather was clear, the visibility good and the roadway was dry.
Plaintiff attributes the accident to the negligence of the truck driver, alleging that had due prudence and care been exercised in the operation of the truck, its driver would have permitted plaintiff's automobile to pass before attempting the left turn, as he saw or should have seen plaintiff's oncoming car. The truck driver is also charged with failing to keep a proper lookout.
The suit is defended upon the grounds that Michelli was driving his automobile at a high and excessive rate of speed; that he failed to heed the highway signs warning traffic that the speed limit in the Town of Kenner was 25 miles an hour; in failing to observe and heed the hand signal given by the driver of the truck before the turn was made; in failing to have his car under proper control, and in not stopping or slowing his speed so that the truck and trailer could complete the turn. Defendants disclaim any responsibility, and in the alternative charge that Michelli was guilty of contributory negligence.
Joseph C. Brousseau, Lieutenant (senior grade), United States Naval Reserve, was a passenger in the Michelli car, and was sitting on the front beside the driver. Called as a witness for plaintiff, he testified that he and Michelli had left Baton Rouge at *Page 266 
about 5:30 o'clock that morning to go to New Orleans. Near Gonzales, Louisiana, they gave a lift to two young men, who rode in the rear seat of the car. As they neared the locus of the accident the truck made a left turn and cut across the lane in which they were travelling, and that it was impossible for Michelli to stop, because the truck was "right on top of us" when the turn was made; that Michelli had the alternative of either running into the truck or swerving to the left to get behind it. This witness stated that the truck was entirely blocking Michelli's side of the highway, the front part being on the shoulder of Michelli's traffic lane, and the rear wheels being on the black or center line of the highway. That when the truck started the turn, Michelli's automobile was between 75 and 100 feet from it, and that Michelli applied his brakes, but it was impossible to stop in that short distance. That when the Michelli car swerved, the rear wheels of the trailer were still on the black line, but the left-hand side of the roadway was open, and just as Michelli drove his car around the rear of the trailer it collidled with the Middleton automobile, which was proceeding in the opposite direction.
Joseph S. Middleton, who is one of the plaintiffs in the three consolidated suits, testified in substance as follows: That he was driving on the highway in the direction of Baton Rouge; that just as he drove across the overpass north of Kenner there was a large trailer-truck ahead of him travelling in the same direction, which he attempted to pass; after pulling out from behind the truck and straddling the black line dividing the traffic lanes, he observed the Michelli car, which was 1200 to 1500 feet away, approaching from the opposite direction. Just then the truck driver signalled for a left turn, and he reduced his speed and fell in behind the truck. The truck proceeded to make the turn and was engaged in that maneuver when the Michelli car came from around the rear of the trailer and ran head-on the Middleton car. Middleton states that the left turn had been made toward the Mississippi River, and that the cab of the truck had cleared the highway entirely, but the trailer blocked the river lane of the highway, that is to say to the left of Middleton. After falling in behind the Rheem truck, which he continued to follow, the next time he saw the Michelli car was at the moment of the collision. The witness states that the truck had been proceeding at about 20 to 25 miles an hour, but on the turn its speed was reduced to about 10 to 12 miles an hour, and that it continued to make the left turn at that speed without having to a stop. The truck made a wide, sweeping turn "like transcribing a half circle or arc."
Joseph T. Michelli, plaintiff, testified substantially as follows: He admits that he was driving between 50 and 60 miles an hour, and that when he first saw the Rheem truck it was approaching from the opposite direction on its proper side of the road. He did not notice the side road (Lyons street) and was under the impression that the truck intended to travel straight toward Baton Rouge. That he did not observe the driver giving a signal of any kind, and had no prior indication that the truck would make a turn until it actually started to cross the highway. When the truck turned, his car was about 50 feet away and he applied the brakes, but could not stop within that distance; that he endeavored to avoid striking the truck by swerving left to pass behind the trailer. He did not see the Middleton automobile until after he had swerved, and he tried to avoid crashing into it by pulling farther left toward the canal on the side of the highway, but was unsuccessful and the cars collided approximately head-on. Michelli states that the highway at that point is about 18 feet wide, and that the rear of the trailer was at about the middle black line and blocked the west traffic lane, and the cab was resting on the shoulder of the road.
Clinton Charles Gautreaux, one of the young men picked up by Michelli at Gonzales, and who rode on the rear seat, testified for plaintiff as follows: On the date of the accident, he and Beaman Gautreaux, who was killed in a subsequent automobile accident, were passengers in the Michelli automobile. The accident occurred on the outskirts of Kenner, Louisiana, on the Baton Rouge side of the overpass; the road into which the truck attempted to turn is a shelled road and does not entirely cross *Page 267 
the highway. He further stated that as the Michelli car neared the place where the accident occurred, he observed the truck approaching from the opposite direction, and that it made a left turn; that he did not observe any signal given by the driver. That when the truck turned, Michelli applied his brakes; that the rear end of the truck was covering Michelli's lane and the front of it was located upon the shoulder of the road on Michelli's right-hand side; that Michelli swerved left to go behind the trailer, and a collision with the Middleton car occurred. The witness stated that it was impossible to pull to the right, because there would have been a collision with the truck. Gautreaux was unable to estimate the distance between Michelli's car and the truck when the turn was made.
Defendants' only witness was Joseph P. Smith, the driver of the Rheem truck, who stated that it was carrying a top-heavy load and was proceeding from New Orleans to St. Rose, Louisiana. That he drove at a speed of 25 miles an hour, and when he neared Lyons Street he slowed down to about 10 or 12 miles an hour, to facilitate his making a left turn. That about 75 yards before reaching Lyons Street, into which he intended to turn, he extended his left hand as a signal and kept it in this position until the truck was entering Lyons Street, when he heard the impact of a collision, and then pulled his hand back into the cab of the truck. Smith observed the Michelli car when he started the turn, and he estimated it to be about four blocks away. His statements regarding distances are amazing. His opinion was that there were about 200 yards to a block, and that the Michelli car was 800 yards away. Later he estimated that 2000 yards constituted a block. He further stated that there is a fifth wheel on the trailer which permits a sharp turn to be made, and that the turn into Lyons Street was sudden and was made without the truck having come to a stop beforehand. According to Smith, he first saw the Michelli car when the truck was 600 yards away from the side road, and when he reached a point about 100 yards from this road he slowed down the speed of his truck preparatory to making the turn.
It is readily apparent that the pivotal point in this case involves a question of fact. Just how far away from the truck was the Michelli automobile when the truck driver attempted to make the left turn? The responsibility for the accident must be placed upon either the driver of the Rheem truck or upon Michelli, for there is no evidence to indicate that Middleton was in any wise negligent. If the Michelli car was from 50 to 75 feet away, the conclusion is inevitable that Smith was guilty of gross negligence and carelessness in attempting to maneuver the truck into a left turn across the highway directly in the path of an oncoming car. On the other hand, if the Michelli car was 2400 feet away when the turn was attempted, as testified to by Smith, the truck driver must be absolved of all responsibility for the occurrence.
The court below gave written reasons for judgment, and its appreciation of the testimony is expressed as follows: "In this case the only believable and credible testimony indicates that when the Rheem Manufacturing truck was approximately 200 to 250 feet from the gravel road, the Michelli car was then 1200 to 1500 feet away and travelling at a speed estimated at between 50 and 60 miles per hour. The truck at first was travelling at the rate of about 25 miles per hour but as it neared the intersection it slowed down to a speed estimated at between 8 to 12 miles per hour. This, according to the witnesses in a position to know, placed the Michelli car at between 75 to 100 feet from the side road, when it first became apparent to Michelli that the truck driver intended making a left turn. The entire testimony of Smith, the Rheem driver, as to the distance of the Michelli car from the side road when the truck was within a hundred feet from this road, is so inaccurate and confused as to make it worthless on this most important point. Smith maintains that Michelli's car was 800 yards from the road, and in one part of his testimony on cross-examination he makes the ridiculous statement that the car was 8000 yards away. Smith's testimony indicates and the Court believes that Smith, did not, in fact, notice the Michelli car at all, and does not know the position *Page 268 
of that car when he started to make the left turn with a thirty-one foot vehicle. Had Smith noticed Michelli's approaching car, he could not but have realized that it was not possible for him to clear Michelli's side of the highway. By attempting the turn, he forced Micheill to choose either to run into the side of the truck, for it blocked not only the west half of the highway, but also the west shoulder, or to attempt to avoid a collision with the truck by going around the back of the truck. Michelli chose the latter, whch involved the Middleton car in a collision. Regardless of the choice, the truck driver's action in making the left turn when he did, resulted in creating a situation whereby Michelli could not avoid a collision. Had the truck driver noticed the Michelli car and had kept in mind the extra duty placed on him because of the type of vehicle he was operating, and had deferred making a left turn for a very brief interval of time, the accident would not have occurred. That conclusion is supported by Middleton's action, who, in attempting to pass the truck, saw the Michelli car, and even at that time realized that it was not safe for him to attempt to pass the truck because of the approaching automobile. From the facts as disclosed by the testimony, it is the Court's opinion that the accident resulted solely from the gross fault and negligence of the Rheem driver, and that the speed of the Michelli car was not a proximate contributing cause of the accident."
Middleton was interrogated as to how long he followed the truck after the attempt to pass it, and the testimony is as follow:
"Q. Can you tell us how long you followed that truck before it commenced to turn.? A. You mean in the point of time or distance?
"Q. Time and distance. A. My estimate would be approximately 30 seconds.
"Q. And how far in distance? A. Maybe about 100 to 150 feet."
Middleton first noticed the Michelli car when he pulled out from behind the truck, and it was then about 1200 to 1500 feet away. While the truck and the Middleton car travelled 100 to 150 feet, or for the 30 seconds, it is obvious that Michelli travelled quite some distance in the interim, for an automobile driven at 55 miles an hour will travel, in 30 seconds, a distance of 2420 feet.
[1] It is well settled in Louisiana that the operator of a motor vehicle who desires to make a left turn, carries the responsibility of being certain that the turn can be made without danger to normal overtalking or oncoming traffic, and he mast yield the right of way to such vehicles.
Act No. 286 of 1938 (Highway Regulatory Act), Sec. 3, Rule 9(a), provides as follows: "The driver of any vehicle on the public roads, highways and bridges of this State shall ascertain, before turning around upon any such road, highway or bridge, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly or unnecessarily delayed and shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless and until the said way is clear."
In Bonstaff v. Hawkins, La. App., 30 So.2d 781, 782, the facts were very similar to those in the instant case. Our brothers of the Second Circuit said: "Louisiana courts have uniformly held that one may not make a left turn across a highway unless that turn can be made without danger to normal overtaking and oncoming traffic. One of the late cases in point is that of Home Ins. Co. v. Warren et al., La. App.,29 So.2d 551."
It was said in Home Inusurance Company v. Warren et al., La. App., 29 So.2d 551, 552:
"The law as has been so frequently cited in different cases, makes it incumbent upon the driver of a motor vehicle attempting to execute a lefthand turn on a public highway to take such precautions and to be so careful that it would hardly seem necessary for the courts to have to make any further statement beyond what is contained in the statute itself. We had occasion to cite it very recently in the case of Lane v. Bourgcois, La. App., 28 So.2d 91, and in which we referred to other recent cases. The rule as laid down in the statute, Dart's Sec. 5214, Act No. 286 of 1938, § 3, Rule 9, makes it the duty of the driver in such cases to yield the right of way to approaching *Page 269 
traffic and prescribes that he 'shall not attempt to make a turn unless and until the said way is clear.'
"In this case the driver was operating a truck, and although its dimensions are not given, we imply from the fact that it was a gasoline truck that it was a rather long and heavy one. Its length and size imposed an additional duty on his part because obviously it is not as easy to handle such a vehicle in executing a left hand turn on the highway as it is a lighter and shorter one."
In discussing the extreme care required of drivers making left-hand turns, in Seale v. Stephens, La. App., 24 So.2d 651, 653, the court said: "It is we'll established in our jurisprudence and in our law that the making of a left turn on a much travelled highway is a very dangerous operation, requiring great care and caution. The responsibility for seeing that such a left turn can be made in safety is placed upon the driver desiring to make such left turn. The law, Highway Regulatory Act of 1938 (Rule 9, Section 3 of Act 286), requires a driver to ascertain before making such a left turn that there is no traffic approaching from either direction which will be unduly or unnecessarily delayed and requires him to yield the right of way to such approaching traffic."
The facts in Grasser v. Cunningham et al., La. App., 200 So. 658, 660, were much similar to the present case. It was there said: "The evidence convinces us that Miss Watson was guilty of negligence in attempting to make a left-hand turn into this gravel road in the face of this on-coming Grasser car. Making a left turn on a much-traveled highway is a very dangerous operation, requiring great care and caution. The responsibility for seeing that such a left turn can be made in safety is placed upon the driver desiring to make such a turn. The law requires a driver to ascertain before making such a turn that there is no traffic approaching from either direction which will be unduly or unnecessarily delayed and requires him to yield the right of way to such approaching traffic. And when a driver intends to turn to his left to enter an intersecting road, he shall approach the intersection in the lane for traffic to the right of and nearest the center of the highway, and in turning shall pass beyond the center of the intersection, passing as closely to the right thereof as practicable before turning the vehicle to the left. Act No. 286 of 1938, Section 3, Rule 9, paragraphs (a) and (b), Dart's Gen.Stat. § 5214."
[2] Concerning the location of the Michelli car when the truck turned, there is on the one side the testimony of Brousseau and Michelli, which would indicate that it was from 50 to 100 feet away, and the testimony of those witnesses is largely corroborated by Middleton's statements. There appears to be no conflict in the testimony of these three witnesses as to that important detail, and we believe that Michelli's car was very close to the truck when the turn was made. Smith's testimony is highly confused and inconsistent. He insists that Michelli's car was 800 yards away when he commenced to turn, and to us it is inconceivable how Michelli could have travelled 2400 feet, or nearly one-half mile, during the short time consumed in making the sudden, partial turn. It would have taken but a few seconds at the most to maneuver the truck into the turn, and this being so we cannot see how Michelli could have travelled that distance in that short period. It is our opinion that the accident was caused solely through the imprudence and carelessness of Smith in making the left turn with the long, heavily laden truck and trailer, which is a most dangerous movement, in the face of oncoming traffic. We agree with the trial court that Smith did not in fact notice the Michelli car at all, for had he noticed it he could not but have realized that it was not possible to cross the highway with safety.
[3] When the truck turned, Michelli was faced with the alternative of either driving into the front part thereof, or swerving to the left in the hope of passing safely around the rear of the truck. In the sudden emergency created by the negligence of the truck driver, he chose the latter course, which seems consistent with the reaction of a prudent person, under the circumstances, and we do not see where he was negligent in taking the course he pursued. *Page 270 
[4] Defendant's counsel also argue that Michelli was negligent in not seeing Smith's signal of his intention to turn. Under the circumstances, if necessary, a motorist must give the proper warning and come to a full stop, and await a favorable opportunity to turn when he will not interfere with traffic in either direction. The duty of not interfering with or impeding traffic in either direction is placed upon the motorist by law, and he must not be content with merely holding out his hand. This is particularly true in this case, where the oncoming car was in close proximity to the truck intending to make the turn. The speed of vehicles travelling at the locale of the accident is conceded to be restricted to 25 miles an hour, by virtue of the provisions of Ordinance 200 of the Town of Kenner, and it is admitted that there are signs along the road, one of which is located just north of Lyons Street, reading "Kenner * * * Speed Limit 25 Miles."
[5] Counsel for defendants argue that Michellil in travelling at the admitted speed of 50 to 60 miles an hour, violated this ordinance, and that the responsibility for the accident rests squarely upon his shoulders. We believe, however, that the speed of the Michelli car was not a contributing cause of the accident, as the collision could well have happened if it had been going 25 miles an hour, just the same as it was going 50 to 60 miles an hour.
In Grasser v. Cunningham, supra, the court said: "The fact that an automobile was going at a greater rate of speed than allowed by law at the time of a collision will not bar a recovery for injuries sustained in the collision if such excessive speed was not a proximate cause of the accident. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed. § 2611, * * *."
Defendant's counsel have cited several cases which they maintain support their contention, but we believe that each of the cited cases can be distinguished from the instant one. In each, the oncoming vehicle was a sufficient distance away to warrant the driver of the car attempting to turn believing that there was sufficient time to negotiate the turn with safety. Here, however, the Michelli car was in close proximity to the truck, and the driver should have yielded the right of way.
[6, 7] That the Rheem truck did not actually collide with plaintiff's car is of no importance. It is a well defined rule of law that he who by his negligence creates a dangerous situation is liable to one who, acting as a reasonably prudent person would act, is injured while attempting to avoid the created danger. See Conners v. Houma Packing Co., Inc., et al., 12 La. App. 167, 125 So. 294.
[8] There seems to be no dispute as to the amount awarded plaintiff by the trial court, as counsel for defendants made no reference thereto in brief or in oral argument. Plaintiff was allowed $581.88 for costs, wages lost, medical expenses and damages to his automobile, all of which items appear adequately proven. For his personal injuries the award was $1,250.00. Pliaintiff was attended by Dr. J.T. Nix, who died prior to the trial of this case; however, there was offered in evidence by agreement of counsel a letter from Dr. Nix's office, stating that he had treated plaintiff from October 9, 1939, to October 27, 1939. Michelli sustained a brain concussion and was cut on the chin, and there remains a scar which the trial court stated was under the chin and about the size of a fingernail. He further sustained a hemotoma of the right leg, bruises of the chest, and injuries to both legs, and still bears a scar on his right leg about 1 1/4 inches long. He remained in the hospital for period of 19 days.
It appears to us that the award is not excessive, and for the reasons assigned the judgment appealed from is affirmed.
Affirmed. *Page 271