AYRES, Judge.
This is an action instituted by plaintiff to recover damages in compensation for personal injuries and property damages sustained in a motor vehicle collision June 27, 19S6, at the intersection of State Highway 1 and a local road in the unincorporated village of Powhatan in Natchitoches Parish.
The collision occurred between plaintiff’s Chevrolet truck and a Ford automobile driven by Mrs. Hattie Mae Mitchell. The defendant is the public liability insurer of the Mitchell automobile. The contractual limits of defendant’s liability were $5,000 for any one person injured in an accident, $10,000 for all persons injured in the same accident, and $5,000 for property damage. After trial, there was judgment in plaintiff’s favor for $5,000 for the personal injuries sustained by him and $285 as property damage to his truck. Defendant appealed.
Plaintiff was traveling in a southerly direction on State Highway 1, a paved main thoroughfare, in a Chevrolet truck equipped with a “dump” body loaded with five cubic yards of native gravel, having an estimated weight of 16,000 pounds. Mrs. Mitchell approached the intersection on the aforesaid local road to plaintiff’s left, intending to cross the highway and continue in a westerly direction. In further describing the scene of the accident, it may be pointed out that the main thoroughfare was theretofore known as State Highway 20, which ran parallel with and adjacent to the right of way of the Texas & Pacific Railroad and was located on the east side of the railroad. On re-routing the highway was constructed adjoining and parallel to the railroad but on the west side thereof and was thereafter designated as State Highway 1. The intersecting road on which Mrs. Mitchell was traveling was the only crossing of the railroad serving to connect the sections of the village as had been built up alongside both the old and new highways. The entire distance that this intersection may be seen by motorists approaching on the highway is not established, but the evidence, particularly the photographs offered in evidence, reveals that the intersection was in full view for at least 700 feet. The highway was straight and practically level.
Due to the location of the point of impact, it is appropriate to further observe that the north lane of the local road east of the aforesaid intersection was approximately in line with the south lane of the same road after it crossed the highway. The mid-section of the Mitchell Ford had reached the western edge of the paved portion of the highway, in line with its lane of travel as it approached the intersection and in line with the south lane of the road after crossing the highway, when it was struck broadside by plaintiff’s truck. At the time of the impact, the right-hand wheels of the truck were on the shoulder of the road. Mrs. Mitchell received fatal injuries and soon expired without having regained consciousness.
Plaintiff was engaged in hauling gravel from a pit in the Martin community of Red River Parish to a highway project one-half mile beyond Powhatan on Highway 1 for the purpose of repairing and rebuilding the shoulders of the highway after completion of maneuvers in that area by the Army.
Through accusations and counter-accusations, fault is charged to each of the drivers in their failure to exercise due precaution to avoid the accident. Mrs. Mitchell was charged with negligence constituting a proximate cause of the accident in not maintaining a proper lookout or keeping her vehicle under proper control, in driving with inadequate brakes, in failing to heed a stop sign, and in entering the intersection without first having ascertained she could negotiate the intersection in safety. Defendant likewise charges plaintiff with negligence constituting a proximate cause of the accident, or, in the alternative, as contributing thereto, and further alleges that plaintiff had the last clear chance to avoid the accident and failed to do so. Specifically, the acts charged to plaintiff are that he was driving *788 a heavily loaded truck in an unincorporated village at a fast, excessive and reckless rate of speed of 45 to 50 miles per hour, notwithstanding such speed was prohibited and limited to 25 miles per hour; that he failed to effectively apply his brakes, and that he saw, or could and should have seen, Mrs. Mitchell in a position of peril and that she was unaware thereof; that he failed to effectively apply his brakes or to resort to any means to avoid the accident, when he had time and opportunity to do so to prevent the occurrence of the accident.
We are relieved of the necessity of resolving the issues as to Mrs. Mitchell’s negligence. Defendant, for the purpose of this litigation, concedes she was negligent in not yielding the right of way to plaintiff’s truck. It may be stated, however, she was apparently completely oblivious of her danger.
The questions for determination are (1) was plaintiff negligent?; (2) if so, did his negligence constitute a proximate cause of the accident?, and (3) did plaintiff have the last clear chance to avoid the accident?
Defendant’s principal charge of negligence against plaintiff is directed to plaintiff’s alleged excessive speed, which it is contended constituted a proximate cause of or prime factor in the occurrence of the accident. Consideration will be first given to this charge, which is of primary importance inasmuch as plaintiff was in an unincorporated village wherein speed was prohibited in excess of 25 miles per hour. LSA-R.S. 32:225. In connection with this phase of the case, plaintiff testified his speed on Highway 1 was from 35 to 40 miles per hour and that on reaching Powhatan he reduced his speed to about 20 miles per hour. At that rate, he testified, his vehicle could have been brought to a stop within 35 to 40 feet. Nevertheless, at the scene of the accident, soon after its occurrence, he told the State trooper, who investigated the accident, that he was traveling 45 miles per hour and was about 140 feet from the intersection when he first realized the danger of an accident. According to the trooper’s measurements, plaintiff’s truck skidded 69 feet before the ■impact of the collision and thereafter continued forward through a depression and up the side thereof, pushing the Ford automobile sidewise in front for an additional distance of 90 feet. Thus, plaintiff’s truck traveled a total distance of 159 feet after he first applied his brakes. The Ford was demolished.
• Also significant is the distance traveled and the number of loads of gravel hauled per day. The distance from the gravel pit to the project where the gravel was dumped on the shoulders of the highway, according to proof in the record, was 25 miles (plaintiff’s estimate was from 25 to 30 miles), or 50 miles for a round trip. According to plaintiff, he hauled 8 to 10 loads per day, thereby making 8 to 10 round trips of 50 miles each, or from 400 to 500 miles per day. According to plaintiff, the accident happened between 4:00 and 5:00 o’clock P. M. just prior to the completion of his 8th trip for the day. The trooper arrived at the scene at approximately 5 :35 P. M. The mile route included a mile and a half through the town of Coushatta, a bridge crossing on Red River, and passage through Armistead, Hanna and Powhatan. A conservative finding is that plaintiff would have had to average not less than 40 miles per hour to cover his route and the trips made per day. Taking into consideration the brief periods for loading and unloading and the necessary slowdown through the town and villages and over the river bridge, in order to maintain the aforesaid average speed plaintiff would have necessarily had to drive at a much greater rate of speed, wherever he could do so.
We are unimpressed with plaintiff’s testimony due to its vagueness as to time, distance and speed as applied to either his or Mrs. Mitchell’s vehicle. From his many years’ experience as a truck driver, such vagueness cannot be attributed entirely to his lack of knowledge or judgment; his *789 loose and indefinite statements can only be accounted for either to non-observation or to a disregard of the facts. As commented by the learned Judge of the District Court:
“Physical evidence in a case, speaking its piece, without excitement and with a degree of precision far more accurate than estimates of eye-witnesses, must carry a great deal of weight.”
In considering the above stated facts and circumstances, no reasonable conclusion could be reached other than that plaintiff was very conservative indeed when he reported to the trooper his speed was 45 miles per hour.
LSA-R.S. 32:225 provides, in part :
“No person shall operate any freight carrying vehicle upon the highways of this state outside of any town or village not incorporated in excess of forty-five miles per hour, or in excess of twenty-five miles per howr within or through any town or village not incorporated.
‘‘Whoever operates a vehicle in violation of the speed limitations of this section shall be prima facie at fault and responsible for any accident prox-hnately caused by such operation, * * *.” (Emphasis supplied.)
This rule is further broadened and emphasized in LSA-R.S. 32:227, wherein such presumption of fault and responsibility for accident is made to apply in other instances of unreasonable aijd improper speed or speed endangering persons or the property of others. Under the speed at which plaintiff was traveling, in view of the terms of the statute, it could only be concluded that plaintiff was at fault and that he has failed to absolve himself from such fault.
The question now presented is whether plaintiff’s negligence constituted a contributing factor as a proximate cause of the accident. It is recognized that the fact that a motor vehicle is driven at a greater speed than allowed by law at the time of a collision will not bar recovery for injuries and damages sustained if such excessive speed was not a proximate or contributing cause of the accident. Grasser v. Cunningham, La.App., 200 So. 658; Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264.
This rule was recognized by this court in Cone v. Smith, La.App., 76 So.2d 46, 49, wherein we stated:
“Negligence alone in the operation of a motor vehicle does not give rise to a cause of action; in order to be actionable the negligence must result in injury or damage and then liability may only be imposed if such negligence is the, or a, proximate cause of the injury; that is to say—the injury must be the natural and probable consequence of a negligent act or omission, which an ordinarily prudent man ought reasonably to have foreseen might probably result in injury.”
See also 60 C.J.S. Motor Vehicles §§ 251, 252.
That plaintiff was on a superior highway affords him no relief. By his actions he forfeited the right of way which is generally accorded traffic on main thoroughfares over intersecting roads. The statute (LSA-R.S. 32:237, subd. A) so provides in unambiguous language. It reads:
“When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of vuay which he might otherwise have.” (Emphasis supplied.)
Appropriate, too, is an expression of this court in Wilson v. Yellow Cab Co. of Shreveport, Inc., La.App., 64 So.2d 463, 466, to wit:
*790 “But it is strenuously urged by counsel for defendant that the driver of the cab had the right to rely upon his preferred status due to the fact that he was traveling on a favored or right-of-way street. As has been many times observed by our courts the superior right which is accorded vehicular traffic on a preferred thoroughfare is not an invitation to negligence and certainly it does not relieve drivers from the results of their negligence. On the contrary the superior right is forfeited by the negligence of a driver. Among the most common acts of negligence which are unexcused by such preferred right are excessive speed and failure to maintain a lookout. Scott v. Richard, La.App., 24 So.2d 175; Culver v. Toye Bros. Yellow Cab Co., La.App., 26 So.2d 296; Prudhomme v. Continental Casualty Co., La.App., 169 So. 147; Bagley v. Standard Coffee Co., La.App., 168 So. 350; Heath v. Baudin, 11 La.App. 40, 122 So. 726; Buckley v. Featherstone Garage, 11 La.App. 564, 123 So. 446.”
According to plaintiff's version of the events immediately preceding the collision, he had the Mitchell car constantly under observation from the time it came over the railroad tracks 147 feet from the intersection and Mrs. Mitchell never during that time looked in his direction; nevertheless, with the knowledge she had not realized his approach, he continued his speed, did not blow his horn at the time or apply his brakes. He was content with the thought that she would stop before entering the intersection and it was only when her car was coming upon the main highway that he says he realized she was not going to stop, whereupon he then blew his horn, applied his brakes, first lightly, and, finally, with force, and began to skid his truck. The collision occurred as the Ford had almost completed its negotiation of the intersection. In view of the relative speeds of the two vehicles and the distance traveled by Mrs. Mitchell, the conclusion is inescapable that plaintiff was. a very considerable distance away when the Ford entered the intersection. When plaintiff realized, as he told the trooper, there was danger of an accident when he was 140 feet away as he saw Mrs. Mitchell place herself in a position of peril, it was gross negligence on his part not to then and there take some effective measures, when he had the opportunity to do so to. avoid the accident. St. Paul Fire & Marine Insurance Co. v. Mason, La.App., 92 So., 2d 311.
Plaintiff’s speed was a prime moving-factor bringing on the accident. It was not a mere condition, nor could it be reasonably concluded that the accident would have happened despite such speed. That a motorist may have been able to have-successfully made the crossing except for-the other’s speed may relate to a mere condition, where the accident would have happened regardless of the speed. Speed would not, therefore, have constituted a proximate cause for such collision. For-example, where a motorist suddenly and abruptly drives into an intersection in front of an approaching vehicle, the motorist’s, unlawful entry into the intersection may constitute the proximate cause of the accident. But, Mrs. Mitchell did not suddenly and abruptly enter the intersection-in front of plaintiff’s approaching truck. Her entrance was-made when plaintiff was. a considerable distance away and while-she was under his constant observation. By his actions in speeding and in not making proper observation or giving heed to the conditions, which he saw or should: have seen and with which he is charged with seeing, the accident would not have occurred. His fault was not a mere condition despite which the accident would' have nevertheless happened; it constituted a proximate cause of the accident contributing at least to its occurrence. Such contributory negligence bars plaintiff’s recovery.
Lastly, defendant urges that plaintiff' had the last clear chance and that, there *791 fore, despite the negligence of Mrs. Mitchell, plaintiff’s actions constituted a proximate cause of the accident and for that additional reason his demands are untenable. The conclusions heretofore reached make it unnecessary to consider this issue which defendant has most seriously urged and presented in an exhaustive brief and argument.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered that plaintiff’s demands be and they are hereby rejected and his suit dismissed at his cost, including the cost of the appeal.
Reversed.