146 So.2d 211 (1962)
Wilma REILEY, Plaintiff-Appellee,
v.
ATLAS CONSTRUCTION COMPANY et al., Defendants-Appellants.
No. 9744.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1962.
On Rehearing October 26, 1962.
*212 Barham, Wright & Barham, Ruston, for appellants.
Brumfield, Turner & Cooper, Robert E. Turner, Baton Rouge, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This case was consolidated with causes 9745 and 9746. Dacey v. Atlas Const. Co., La.App., 146 So.2d 218; Reiley v. Atlas Const. Co., La.App., 146 So.2d 219. The defendants are the same in all suits, but Joan Dacey is plaintiff in No. 9745, while Theresa Reiley instituted No. 9746. As the cases were consolidated on appeal as well as for trial, we will discuss them all in this opinion.
Miss Joan Dacey was driving a 1958 Ford automobile, with Wilma Reiley and Mrs. Theresa Reiley as guest passengers, which was involved in a collision with a motor grader owned by defendant, Atlas Construction Company, Inc., and insured by defendant, Fireman's Fund Insurance Company. For personal injuries received in the accident, the lower court awarded judgment against both defendants in solido, and in favor of Wilma Reiley for $1500, Joan Dacey for $3500, and Mrs. Theresa Reiley for $35,000, together with interest and cost; and from which judgments, both defendants have appealed.
At plaintiffs' request, the cases were tried before a jury, but the jury being unable *213 to reach a verdict, a mistrial was ordered. Thereafter, plaintiffs waived trial by jury and all parties stipulated the cases would be submitted for decision to the trial judge on the record as made up. In deciding the case, the district judge assigned written reasons for his judgments in which he outlined in detail the evidence and his appreciation of the law. While there are naturally some details that are hotly contested, the general nature of the contest is relatively simple, which we will briefly outline.
The accident occurred near Jonesboro, Louisiana, on U. S. Highway 167 on June 27, 1959, at about 10:30 o'clock a. m. Joan Dacey was driving the Ford automobile which belonged to plaintiff herein, Mrs. Reiley was seated to her right on the front seat, and Wilma Reiley was in the back seat lying down, and apparently asleep at the time of the collision. The highway in question was undergoing repairs by defendant, Atlas Construction Company, Inc., and various warning and caution signs were prominently displayed along the route indicating the construction work. Defendant contractor had just completed laying a blacktop surface and was in the process of dressing the shoulders of the highway. Miss Dacey was driving the automobile north on this highway, and as she was proceeding on a straight portion thereof she observed a motor grader several hundred yards in front of her. This machine was approaching from her opposite direction and the operator had turned to his right and had headed the motor grader into a dirt driveway on the west of the road. As Miss Dacey approached this driveway, the grader operator backed same from the driveway, across the highway, shifting into forward gear and proceeded north. Miss Dacey observed the motor grader back from the driveway and head north in her lane of traffic, but alleged she was unable to stop her vehicle and collided with the left rear of the motor grader causing personal injuries to all occupants of the Ford.
Plaintiffs contend the accident was caused solely and entirely by the negligence of Lester Triplett, the operator of the motor grader, and who was an employee of defendant, Atlas Construction Company, Inc. Miss Dacey admits she was driving between 60 and 70 miles per hour; that she had observed some construction and caution signs along the highway several miles back, but she had not noticed any such signs immediately preceding the accident; that because it was Saturday, she had presumed no construction work was being done; that she observed the motor grader headed into the driveway, but she assumed he would back into the highway and head south; and that by the time she realized he was going to proceed north and thus be in her lane of traffic, it was too late for her to avoid the accident.
Defendants, on the other hand, contend the accident was caused entirely by the negligence of the operator of the Ford automobile; and that the motor grader operator was free of any negligence. They contend Miss Dacey was driving at an excessive rate of speed under the circumstances, especially in view of the numerous display of caution signs up and down the project; that the highway was straight and level for at least a mile preceding the point of collision; that visibility was good; that the motor grader operator had not only backed his vehicle from the driveway, but had shifted same into forward gear, had reached his own lane of traffic and straightened his machine out and proceeded approximately 60 to 70 feet at about 2 ½ miles per hour in the east lane of traffic when he was struck from the rear by the vehicle being driven by Miss Dacey. They, therefore, contend the accident was caused entirely by Miss Dacey's negligence in illegally driving the vehicle into the rear of the motor grader which was proceeding along its own lane of travel on a wide-open highway.
The lower court adopted Joan Dacey's version of the accident, and thereby decided the accident was caused entirely by the negligence of the operator of the motor grader. The district judge also rejected *214 defendants' special plea of contributory negligence concluding that Miss Dacey's admitted excessive speed did not contribute to the accident. We quote from his written opinion:
"Miss Joan Dacey, the driver of the automobile and one of the Plaintiffs, in our estimation, gave a very straight-forward account of the events surrounding the collision. * * * The first time she saw the motor grader, according to her testimony, it was on the West side of the road. She couldn't make out the maneuver of the operator, and finally she realized he was in her lane of traffic, at which time she tried to avoid the accident. Just prior to the accident, she saw no `road under construction' signs. On cross-examination she said she did not see the negro watchman. When she first saw the motor grader, she attempted to stop her car before the grader got over on her side. She then put on her brakes; and she estimated her speed at between 60 and 70 miles per hour. She explained that since it was Saturday morning, she did not expect to find anyone working. When she hit the motor grader, it was in the lane of traffic they had been traveling, on the East side of the highway, and the motor grader was headed North. She explained the reason for not passing on the left when she hit the motor grader, and that was the fact that the driver of the motor grader confused her in causing her to think he was going to go South in the other lane and that he was not going to cross the highway. She didn't remember seeing the signs; and her further explanation was that she was watching the highway."
After a painstaking review of this record, we are unable to find any manifest error in the factual findings of the esteemed trial judge, but we do find ourselves in disagreement with some of his legal conclusions. We conclude the motor grader operator was negligent and that such negligence was a proximate cause of the accident. We also conclude Miss Dacey was negligent; that such negligence contributed to this accident; and that, therefore, the alternative plea of contributory negligence should have been sustained and her demands thereby rejected.
We will first discuss the reasons why we think the record establishes negligence on the part of the motor grader operator. The key to this question, in our opinion, depends upon a determination of how far Triplett had driven the motor grader in a northerly direction after he had backed it from the driveway and headed north on the east side of the highway. This is a matter in which the testimony is very conflicting and we will not attempt to separately analyze the testimony of the many witnesses on this point. Suffice it to say, we have concluded the motor grader had traversed a very short distance in the east lane of traffic before it was struck from the rear by the Ford automobile. It is doubtful if the machine had become completely aligned on the road at the instant of impact. If the evidence substantiated appellants' contention that the machine had straightened up in its own lane of travel and had gone some 60 or 70 feet before being struck from the rear, we agree the operator would be free of any negligence. However, the lower court and this court cannot accept this version. The maneuver as executed constituted negligence on the part of the motor grader operator. In fact, he admitted he did not look as far south as visibility permitted. He was performing a highly dangerous operation with a cumbersome piece of road machinery and as such was under an obligation to use an exceptional degree of care which he failed to do.
Miss Dacey was admittedly driving her vehicle at a speed of between 60 and 70 miles per hour. She also testified she had noticed some construction signs along the highway, but paid no particular attention to them because she was of the opinion that no road work would be in progress because *215 it was Saturday. This was an unwarranted assumption on her part. Even though the motor grader operator was negligent, her excessive speed was a definite factor in the accident, for had she been driving at a lawful and reasonable rate of speed she could have avoided the accident. Her negligence, therefore, being a proximate cause of the accident, the alternative plea of contributory negligence filed by defendants should be sustained as to the claim of Joan Dacey.
The lower court concluded that Miss Dacey was faced with a sudden emergency when she first saw the motor grader backing across the highway; and that under the doctrine of sudden emergency, she was not negligent in failing to extricate herself from her perilous position. We do not think this doctrine has any application to the facts as found by the lower court and announced by us herein. Where the emergency is created by the joint negligence of two parties, neither should be permitted to recover. In other words, if the automobile driver had been operating her vehicle at a lawful rate of speed there would have been no emergency.
In defendants' answers, it was alleged the driver of the Ford automobile was the insured under a liability policy covering this vehicle; and that all plaintiffs had made settlements with such liability insurer for the injuries received by them in the collision. By way of an exception of no cause or right of action in each case, this matter was again raised in which it was contended such settlements were made without reserving any rights against these defendants, who were at the most only liable as joint tort feasors with Joan Dacey; and that such settlements released defendants. The lower court rejected these contentions and would not allow the introduction of evidence as to the nature of such settlements. This ruling was no doubt predicated on a finding that the accident was caused entirely by the negligence of Triplett, and, therefore, any release by the insurer of the Ford would be irrelevant and perhaps prejudicial.
This court, however, having found Joan Dacey and Lester Triplett guilty of joint negligence proximately causing the accident, they became jointly and solidarily liable for the injuries received by Wilma Reiley and Theresa Reiley who were guest passengers.
As to the effect of releasing joint obligors, LSA-C.C. art. 2203, provides:
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
"In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission."
Our jurisprudence has held generally that the remission or conventional discharge in favor of one of the codebtors in solido discharges all others unless the creditor has expressly reserved his right against the latter and the rule applies to obligations ex delicto as well as an obligation ex contractu. Evans v. Walker (La. App. 2 Cir., 1959), 111 So.2d 885; Reid v. Lowden, 192 La. 811, 189 So. 286; Guarisco v. Pennsylvania Casualty Co., 209 La. 435, 24 So.2d 678; Lewis v. Travelers Indemnity Co., La.App., 81 So.2d 178.
However, it has also been held that whether such a reservation has been made by the creditors is a question of proof; that there is nothing sacramental about the form of such reservation; and that no one is presumed to renounce a right unless it clearly appears that he intended to do so. Landry v. New Orleans Public Service, Inc. et al., 177 La. 105, 147 So. 698 (1933); Middleton v. Rheem Mfg. Co. et al. (La. App. Orleans 1948) 34 So.2d 271 (writs denied).
It, therefore, is necessary in the instant cases to ascertain what types of settlements *216 were made by Wilma Reiley and Theresa Reiley with the liability insurer of Joan Dacey. This record does not contain such evidence, except that such settlements were made. The cases should, therefore, be remanded for the limited and specific purpose of securing all evidence relating to such settlement.
It is, therefore, ordered that this cause be remanded to the Honorable Second Judicial District Court in and for the Parish of Jackson, State of Louisiana, for the limited purpose of securing all legal evidence relative to any compromise or release between this party and any liability insurer of the driver of the vehicle in which she was a guest passenger; and that after such evidence is received, the case be decided in accordance with law and the views expressed herein. Costs of this appeal are taxed equally against the appellants and appellee and the assessment of all other costs shall await the determination hereof.
Remanded.
AYRES, Judge (dissenting).
I concur in the majority finding that plaintiff driver, Joan Dacey, was guilty of negligence constituting a proximate cause of the accident concerned in this litigation. However, the record, in my opinion, establishes that the fault and negligence of plaintiff, Joan Dacey, (1) in driving at an excessive rate of speed, estimated as high as 85 m. p. h. and admitted to have been from 60-70 m. p. h., over a road under construction, (2) in failing to keep and maintain a proper lookout, and (3) in failing to reduce her speed or to take other evasive action to prevent an accident, when, admittedly, at a distance of 500 feet or more from defendant's road machine she realized the likelihood and danger of an accident, was the sole, proximate cause of the accident and the injuries sustained therein.
In this connection, it may be pointed out that the skidmarks of plaintiffs' car began approximately 122 feet from the point of impact. Thus, Miss Dacey proceeded, after realizing that an accident was imminent, some 378 feet, or more, without doing, or claiming to have done, anything whatsoever to reduce her speed or to avoid the accident. At the time of the accident, the road machine was entirely on the east half of or in the northbound traffic lane; the west half of the highway was open at the time and free of traffic.
As additional proof of excessive speed, the record shows that plaintiffs' vehicle averaged, according to their testimony, a speed of 60 m. p. h. for a distance of approximately 180 miles, during a period of approximately three hours and over a route through numerous towns and other municipalities from Lake Charles to the scene of the accident near Jonesboro. In the meantime, at Alexandria, a stop was made for coffee and a change of drivers.
That plaintiff driver was not keeping nor maintaining a proper lookout is evidenced by her failure to observe the posted warning signs or to see the flagman waving to her to stop, and in her admitted failure to keep the road machine under constant observation.
Defendant's employee, before backing the road machine onto the highway, made observation for a distance of a half mile, or more, and, observing no traffic approaching from either direction, obviously concluded the maneuver intended, that is, the completion of the turning movement by backing the machine onto the highway and proceeding north in the northbound traffic lane, could be made in safety. The movement was, in fact, made and completed in safetythe collision occurred only after the machine had reached, and was in, working position, headed north on the east half or in the northbound traffic lane. His actions were, therefore, in my opinion, those of a reasonable, prudent operator.
The record, in my opinion, fails to establish any fault or negligence on the part *217 of defendant's driver constituting either a proximate or a contributing cause of the accident.
To pass a vehicle proceeding in its proper traffic lane, it was Miss Dacey's duty to drive at such a distance to the left of such vehicle so as to avoid striking it. LSA-R.S. Art. 32:233, subd. A. This, the record shows, she could have done had she been driving at a lawful rate of speed and had been keeping a proper lookout.
For these reasons, I respectfully dissent from the majority opinion.

ON REHEARING
HARDY, Judge.
On original hearing we ordered this case remanded for the limited purpose of admitting evidence as to a compromise or release between plaintiff and the liability insurer of the driver of the vehicle in which she was a guest passenger. This action was taken by reason of the exception of no cause or right of action interposed by defendants, based upon the contention that settlements had been made without reserving rights against the defendants, who were liable as joint tort feasors, and that such settlements effected a release of liability with respect to these defendants.
Subsequent to rendition of our opinion and decree, by stipulation between counsel, the record was supplemented to include copies of the settlements actually made. These agreements included a specific reservation of plaintiff's right to claim and prosecute actions for damages against any and every other party. No further contention has been raised with reference to this point and the issue presented must be considered as having been properly abandoned.
However, we chose to grant the application for rehearing filed by defendants without limitation or restriction in order to permit a complete re-examination of the case.
In brief on rehearing able counsel for defendants urgently contends that the road grader had completed its operation of reversing its direction by backing onto the side road then heading across the highway, and that at the time of the collision it was headed north and entirely located in the east lane of the highway. In support of this argument counsel points to the fact that after the vehicles came to rest following the collision they were separated by a distance of some thirty to forty feet, and that the road grader, in fact, was entirely in the east or northbound lane of travel, deducing from these facts the conclusion that the grader was struck from the rear while in its proper lane of travel and that the Reiley automobile rebounded or "bounced" backward and across the highway a distance of thirty to forty feet. The weakness of this argument lies in the fact that the record contains no definite testimony as to the movement of the motor grader after the impact. The operator of the machine testified that he did not recall moving it, but his testimony as to distances was demonstrably so unreliable that we cannot accept his version of this circumstance immediately following the occurrence of the accident. This witness testified positively that he was entirely unaware of the approach of the Reiley automobile until it struck the rear of his machine. It follows that since the machine was moving at the time of the impact it could not have been brought to an immediate stop. It is only reasonable to conclude that the operator of the cumbersome machine continued it in motion until he brought it to a stop properly aligned in the northbound lane of the highway. This factor must account for some of the distance separating the vehicles following the impact. Nor can we believe that the Reiley car struck the 11½ ton, 25 foot long motor grader with such violent force as would have caused it to bounce backward. This possibility was refuted by the testimony of a mechanical engineer tendered as an expert witness in automotive engineering on behalf of plaintiff. Other factual circumstances *218 are relevant to the resolution of this point. The net braking distance for automobiles traveling within the 60-70 mph. range varies from approximately 140 to 190 feet. The testimony is convincing that the Reiley automobile skidded for 122 feet before making contact with the motor grader, and, accordingly, it is certain that the momentum of the vehicle had been substantially decreased before the actual impact. A photograph of the Reiley automobile introduced in evidence shows that while the right front of the car was badly crushed, it does not appear that the damage was of such a kind and nature as would indicate any tremendous degree of force in connection with the collision. Upon the basis of these reasons we are convinced that the motor grader was not completely aligned in its proper northbound lane of travel on the highway at the time of the collision. This finding reaffirms our conclusion of negligence on the part of the operator of the road grader.
Our careful re-examination and full study of the voluminous record has served only to more firmly convince us of the correctness of the conclusions reached in the majority opinion on original hearing.
It is necessary that we proceed now to a consideration of the quantum of the award. Judgment was rendered in favor of this plaintiff in the sum of $1,500.00. We think the amount of this award was excessive. Plaintiff sustained a badly sprained ankle which incapacitated her from performing the duties of her employment for a period of two weeks and thereafter caused some pain, discomfort and inconvenience for a comparatively short period of time. We think an award of $500.00, together with medical expenses, which are established by the record in the total amount of $58.50, would be adequate compensation under the circumstances.
For the reasons assigned the judgment appealed from is amended to the extent of reducing the amount thereof to a sum of $558.50, with interest thereon at the legal rate from date of judicial demand until paid, and as so amended the judgment is affirmed. Costs of this appeal are taxed against plaintiff-appellee and all other costs are assessed against defendants-appellants.
AYRES, J., dissents.